1  RYAN TYZ (CSB No. 234895)
   ryan@tyzlaw.com
2  ERIN JONES (CSB No. 252947)
   ejones@tyzlaw.com
3  DEBORAH HEDLEY (CSB No. 276826)
   deborah@tyzlaw.com
4  STEPHANIE ALVAREZ SALGADO (CSB No. 334886)
   stephanie@tyzlaw.com
5  TYZ LAW GROUP PC
   4 Embarcadero Center, 14th Floor
6  San Francisco, CA 94111
   Telephone: 415.868.6900
7
   Attorneys for Defendant
8  Fandom, Inc.

9
                    **UNITED STATES DISTRICT COURT**
10
                   **NORTHERN DISTRICT OF CALIFORNIA**
11
                        **SAN FRANCISCO DIVISION**
12

13
14 | VISHAL SHAH, individually and on behalf of all others similarly situated, | Case No: 3:24-cv-01062-RFL |
15 |           Plaintiff, | **DEFENDANT FANDOM, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
16 |           v. | |
17 | FANDOM, INC., | Date:       September 10, 2024
                     Time:       10:00 a.m.
18 |           Defendant. | Courtroom:  15, 18th Floor |
19 |  | FAC Filed: April 29, 2024 |

Plaintiffs fail to address key, dispositive issues in their Opposition, including that they have failed to allege the plausible existence of a pen register installed by Fandom. Rather, their Opposition lays bare that Plaintiffs cannot salvage their claim by amendment, and their First Amended Complaint ("FAC") should be dismissed with prejudice.

## I. THE OPPOSITION CONFIRMS THE ALLEGED TRACKERS ARE NOT "PEN REGISTERS"

Plaintiffs' Opposition does not address that the Pen Register Statute only prohibits the use of devices or processes that "record[] or decode[] dialing, routing, addressing, or signaling information." Cal. Penal Code § 638.50. As discussed at length in the Motion to Dismiss, the FAC does not allege any facts that the addressing information of any such outbound communication is recorded. Instead, it alleges only the *source* addresses (Plaintiffs' IP addresses) are transmitted to a third party. That is not a pen register.

Plaintiffs rely upon federal criminal cases to argue that the Pen Register Statute applies to IP addresses. But this line of cases (decided under the federal pen register statute) makes clear that a "pen register" captures only addressing information relating to the *recipient or destination* of a communication. For instance, in *Soybel*, a disgruntled former employee was convicted of committing cyberattacks against his former employer. *United States v. Soybel*, 13 F.4th 584, 591 (7th Cir. 2021). In that case, law enforcement placed an IP pen register on *Soybel's* home computer IP address, to track the IP address of the sites he was visiting (i.e., *destination* IP addresses) and found that, in a three-month period, he attempted to access his former employer's system 790 times. *Id.* This evidence that Soybel was routing outgoing communications to his former employer's (destination) IP addresses was used to convict him for hacking. In other words, law enforcement already knew Soybel's source IP address, because that's where they installed the pen register (on his device), and used that pen register to capture unknown information, *i.e.*, the destination/recipient IP addresses of websites he was visiting. *Id.*; *see also United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017) (pen register used to capture IP *routing* information). Here, Plaintiffs allege that Fandom installed a pen register on Plaintiffs' home computers (their source IP addresses) to capture *those* same IP addresses, which makes no sense

because knowing the source address is necessary to install a pen register. At the same time, Plaintiffs make no allegation that Fandom recorded any destination IP addresses that Plaintiffs visited, which is all that a pen register covers. The very cases on which Plaintiffs rely demonstrate that the conduct they allege does not violate the plain terms of the Pen Register Statute. Because Plaintiffs cannot overcome these facts, their claim should be dismissed.

### A. Plaintiffs Cannot Save Their Pleading by Alleging New Facts in Opposition

Apparently recognizing this fatal flaw, Plaintiffs attempt to pivot from claiming that Fandom installed a pen register (as in the FAC), to claiming for the first time that Fandom installed a "trap and trace" device (in the Opposition). But the FAC pleads only that Fandom installed a "pen register," and does not plead that it installed a "trap and trace device." Dkt. 15, ¶¶ 116 (citing Cal. Penal Code 638.50(b) ("Pen register")); 117 ("The Trackers are 'pen registers…'"), 118 ("Defendant installed the Trackers—which are pen registers."). Plaintiffs cannot salvage their pleading by alleging violation of a different statutory section. *See Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998); Cal. Penal Code § 638.50 (c) ("Trap and trace device"). In any event, the alleged trackers are not, and cannot be, a trap and trace device, which, by its definition, is limited to recording "incoming" signals. Cal. Penal Code § 638.50 (c) ("Trap and trace device" "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information … of a wire or electronic communication…"). The alleged trackers do not record "incoming" electronic pulses by Plaintiffs' own admission. Dkt. 15, ¶ 32 ("the Trackers collect information—users' IP addresses—that identifies the ***outgoing*** 'routing, addressing, or signaling information' of the user" (emphasis added)). These fatal admissions cannot be overcome by amendment.

### B. No Case Has Applied the *California* Pen Register Statute to IP Addresses

As stated in the Motion, no case applying the *California* Pen Register Statute has extended the definition of a pen register to IP addresses. None of the authorities Plaintiffs cite supports their proposed expansion of the statute. Plaintiffs rely on cases interpreting distinct parts of the CIPA that have nothing to do with pen registers, and that are inapplicable. *See, e.g., In re Facebook, Inc. Internet Tracking.*, 956 F.3d 589, 611 (9th Cir. 2020) (allegations under Cal. Pen.

1  Code § 631(a)); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (bringing allegation
2  that defendants recorded communications); *Ribas v. Clark*, 38 Cal. 3d 355(1985) (allegations re:
3  eavesdropping); *Javier v. Assurance IQ*, LLC, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022)
4  (allegations under wiretapping section of CIPA); *Revitch v. New Moosejaw, LLC*, 2019 WL
5  5485330, at *3 (N.D. Cal. Oct. 23, 2019) (alleging eavesdropping-related claims); *Matera v.
6  Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *15 (N.D. Cal. Aug. 12, 2016)
7  (alleging intercepting, scanning, and analyzing of email); *In re Google Inc.,* 2013 WL 5423918,
8  at *16 (N.D. Cal. Sept. 26, 2013) (bringing allegations under Sections 631 and 632).

9        For instance, *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 785-786 (N.D. Cal.
10  2022) has nothing to do with the California Pen Register Statute. Rather, that case deals with
11  allegations that Meta violated the eavesdropping and wiretapping sections of CIPA by obtaining
12  certain healthcare-related information of Facebook users. *Id.* ("As a patient browses through the
13  MedStar website, the Meta Pixel allegedly continues to transmit information to Meta, including
14  information about doctors, medical conditions, and appointments associated with a patient's
15  session."). The mere mention of the term "IP address" in a case about a different issue under a
16  different statutory framework does not support Plaintiffs' argument.

17        In addition, the legislative history of the Pen Register Statute, and its text, make clear that
18  the legislature intended this law to apply to telephonic dialing, only. *See* Dkt. 20-1, Exs. 11, 13;
19  Cal. Penal Code § 638.52(d). Indeed, the sole case related to the Pen Register Statute cited by
20  Plaintiffs, *Greenley v. Kochava, Inc*., related to software installed *on a telephone*. No. 22-CV-
21  01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023). And Plaintiffs are wrong when
22  they argue that the basis of the Court's decision in *Licea v. Hickory Farms* "did not hinge on
23  whether the alleged pen register device was a telephonic device." Dkt. 21 at 11:10-20. In *Licea*,
24  the Court declined to extend the Pen Register Statute to Plaintiff's complaint where it found "**first
25  and foremost**, the operative complaint only alleges a 'device' without any specific reference to
26  a mobile phone or other potential form of communication device potentially qualifying as a
27  cellular device." 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024) (emphasis added). Further,
28  the *Licea* Court also found that "public policy strongly disputes Plaintiff's potential interpretation

DEFENDANT FANDOM, INC.'S
REPLY ISO MOTION TO DISMISS FAC     - 3 -     CASE NO. 3:24-cv-01062-RFL

of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator." *Id.* In other words, *Licea*'s failure to state a claim was based on his failure to plead a pen register installed on a phone, and the Court also found it would disrupt public policy to extend the statute in the manner that plaintiff urged. Given the legislative intent of the Pen Register Statute, the same rationale should guide the Court here.

## II. ALLEGATIONS REGARDING "DISCLOSURE" ARE MISPLACED

Plaintiffs' Opposition also newly argues that Fandom should be held liable under the Pen Register Statute for supposedly sharing Plaintiffs' IP addresses (that Plaintiffs voluntarily disclosed to Fandom) with third parties. Dkt. 21, 3:12-26. But Plaintiffs fail to cite to any statutory provision or any case law applying the Pen Register Statute to information sharing. This argument has no support in the text of the Pen Register Statute, which prohibits using a device that "records or decodes dialing, routing, addressing, or signaling information" but makes no mention of sharing voluntarily-provided information with third parties. Cal. Penal Code § 638.50. Nor does Plaintiffs' argument find support in case law. Plaintiffs argue that *Licea v. Hickory Farms, Capitol Records v. Thomas-Rasset* and *Malibu Media v. Pontello* are inapposite because there was no allegation in those cases that information captured by defendants was then shared with third parties. Because the Pen Register Statute does not extend liability to the sharing of information, that is not a basis to distinguish their application here. In fact, *Malibu Media* confirms that disclosure of voluntarily-provided information to a third party is not a violation, where the court rejected the argument that Malibu's investigator was liable for "tracking the IP addresses" of users that shared its videos on the BitTorrent network. *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *3, *4 (E.D. Mich. 2013). Because users had voluntarily provided their IP address to BitTorrent, Malibu then collecting that voluntarily-provided information did not fall under the federal pen register statute. *Id.* The same logic should apply here.

## III. PLAINTIFFS CONCEDE THE IP ADDRESS IS THE COMMUNICATION –

**WHICH IS ANOTHER REASON IT IS NOT A PEN REGISTER**

Plaintiffs' claim also fails because they allege that the accused trackers collect the *contents* of a communication. A pen register is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents* of a communication." Penal Code § 638.50 (b) (emphasis added). The FAC makes clear that what is captured are the contents of the communication. *See e.g.*, Dkt. 15 ¶ 37, (Accused Code "instructs the user's browser to send the user's IP address through the cookie"), ¶ 48 ("Audiencerate will continue to receive the user's IP address through the cookie"), ¶ 91 (Plaintiff Shah's IP address allegedly sent both "as standalone data" and "within [a] cookie") (all emphases added). The FAC's figures confirm this, showing IP addresses located inside allegedly transmitted cookies. *See, e.g., id.*, Figures 5-6, 10-11 (highlighting IP addresses located within "cookie" fields). While they attempt to downplay its significance, Plaintiffs' Opposition further concedes that what they allege to be captured are the contents of the communication. Dkt. 21 9:18-21 ("[T]he mechanism through which the IP address is sometimes transmitted—the cookie—is irrelevant."). Plaintiffs make this same concession where they analogize the accused trackers' transmission of a cookie as the sending of an unopened letter with an IP address inside the envelope. Dkt. 21, at 10:1-4. But whether the transmission is unopened or unread does not matter for the Pen Register Statute, which concerns whether the addressing information is sent as the *contents* of a communication or not. *See* Penal Code § 638.50 (b) (emphasis added). Where Plaintiffs allege that the IP address is collected as the *content* of a communication (the cookie), their claim falls outside the statute.

Plaintiffs' reliance upon *Zynga* and its progeny is also misplaced. These cases, about a different statute, make clear that the same information can be sent as either (or both) content or "record information." In *Zynga*, the Court held that plaintiffs did not plausibly allege that the *content* of communications had been divulged where their allegations focused on address information found in an automatically generated web browser *header*. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). Here, unlike *Zynga*, Plaintiffs expressly allege that the IP address is sent as the *content* of the communication and thus the holding of *Zynga* does not apply.

*See e.g., Malibu*, 2013 WL 12180709, at *4 ("In the instant case, the IP address received by IPP was part of the content of the communication, so the Pen Register Act has no application"); *Capitol Recs. Inc v. Thomas-Rasset,* 2009 WL 1664468, at *3 (D. Minn. 2009) ("The Pen Register Act has no application here because the IP address recorded by MediaSentry was part of the content of the communication.")  Plaintiffs also attempt to distinguish *Malibu* and *Capitol Records* by arguing that in both cases, more information than just the IP address was recorded. But this is a meaningless distinction.  In both cases, the Courts held that the collection of an IP address *as content* barred the application pen register statutes, as it should here.

### IV. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT FANDOM "INSTALLED" OR "USED" A PEN REGISTER

The FAC has also not alleged facts that Fandom installed or used a pen register.  Their Opposition cites to approximately 30 paragraphs in the FAC, but none alleges facts that Fandom installed or used a pen register. Dkt. 21 at 12:28.  Rather, the facts of the FAC allege that Fandom "caused" a pen register to be installed – which is a conclusory statement without support. Moreover, this allegation is undermined by the specific allegations wherein Plaintiffs allege that it is third parties who used the accused code.  Dkt. 15 ¶ 35 ("GumGum uses its Tracker). *id*. ¶ 45 ("Audiencerate uses its Tracker"); *id*. ¶ 54 ("TripleLift uses its Tracker.").

### V. COUNSEL OF RECORD APOLOGIZES FOR THE OVERSIGHT IN CONFORMING THE BRIEF TO THE JUDGE'S RULES

Undersigned counsel for Fandom apologizes to the Court for the oversight in filing a brief which did not comply with the Court's Standing Order.  Hedley Decl., ¶2.  Counsel respectfully requests the Court not hold this oversight against her client. *Id.* at ¶3.  To remedy any perceived prejudice, this reply is only six pages, bringing the total page count of both briefs to 25.

### VI. CONCLUSION

Plaintiffs have not shown *how* they could amend to fix the deficits of their FAC, and have, in fact, made arguments conceding they could never state a claim. *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment . . . constitutes an exercise in futility[.]").  Thus, Fandom respectfully requests the Court grant its motion to dismiss, without leave to amend.

|   |   |
|---|---|
| Dated: July 24, 2024 | Respectfully submitted,<br>TYZ LAW GROUP PC<br><br>*/s/ Deborah Hedley*<br>Deborah Hedley<br><br>Attorneys for Defendant<br>FANDOM, INC. |