RYAN TYZ (CSB No. 234895)
ryan@tyzlaw.com
ERIN JONES (CSB No. 252947)
ejones@tyzlaw.com
DEBORAH HEDLEY (CSB No. 276826)
deborah@tyzlaw.com
STEPHANIE ALVAREZ SALGADO (CSB No. 334886)
stephanie@tyzlaw.com
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Defendant
Fandom, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VISHAL SHAH, JAYDEN KIM, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>FANDOM, INC.,<br><br>　　　　　Defendant. | Case No: 3:24-cv-01062-RFL<br><br>**DEFENDANT FANDOM, INC.'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, AN ORDER CERTIFYING THE MOTION TO DISMISS ORDER FOR INTERLOCUTORY APPEAL; MEMORANDUM OF LAW AND POINTS AND AUTHORITIES** |

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal                                   Case No. 3:24-cv-01062-RFL

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that Defendant Fandom, Inc. will move and hereby does move for leave to file a motion for reconsideration of the Court's October 21, 2024 Order at Dkt. No. 34 denying Fandom's Motion to Dismiss (the "Order") pursuant to Rule 7-9 of the Local Rules for the United States District Court for the Northern District of California. As outlined in those rules, no response is necessary, and no hearing will take place, except by further order of the Court.

In the alternative, Fandom hereby moves the Court for an order, pursuant to 28 U.S.C. § 1292(b), certifying the Order for interlocutory appeal and for a stay of litigation pending the appeal. As explained more fully below, the Court's ruling hinges on matters of statutory interpretation where there is substantial ground for difference of opinion. Correctly resolving this purely legal issue now instead of in a later appeal would resolve an issue potentially subjecting countless website providers to criminal liability and save an enormous amount of wasted time and resources for the parties and the Court.

This motion is based on this Notice of Motion and Motion, the Memorandum of Law and Points and Authorities, arguments of counsel, and the papers, records, and pleadings on file.

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal                                    - i -                                    Case No. 3:24-cv-01062-RFL

## ISSUES TO BE DECIDED

1. Whether the Court should grant Fandom leave to file a motion for reconsideration of the Court's Order;

2. Alternatively, whether should the Court certify its Order for interlocutory appeal.

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal                              - ii -                         Case No. 3:24-cv-01062-RFL

## MEMORANDUM OF POINTS AND AUTHORITIES

Fandom requests that the Court grant leave for Fandom to file a motion for reconsideration of its Order denying Fandom's Motion to Dismiss. Fandom makes this request based on new authority decided after the Motion holding that the pen register statute does not extend to the mere collection of an IP address of a device someone uses to send a communication. The Court should also reconsider its Order because it did not take judicial notice of, and therefore did not consider, relevant legislative history of the pen register statute showing that the California Legislature understood that a pen register only applies to addressing information of a recipient of a communication and not that of a sender.

Alternatively, Fandom requests that the Court certify its Order for interlocutory appeal. Resolving this question early in an appellate court is particularly important because the Court's Order would subject Fandom (and most website providers) to criminal liability for basic internet functionality. The necessary showing for interlocutory appeal is easily met. The Order decided novel, case-dispositive legal questions and there is no dispute that fair-minded jurists could reach contradictory conclusions because multiple California Superior Courts have done so. Resolving this issue early is especially critical for Fandom, who is subject to both this Order and a contradictory order from a California Superior Court.

### I.   BACKGROUND

Plaintiff Vishal Shah filed his initial complaint for violation of California Penal Code Section 638.51 in Superior Court of California for the County of San Francisco on January 8, 2024. *See* Dkt. 1-1. Fandom removed the case to this Court under the Class Action Fairness Act, Dkt. 1, and Plaintiff Shah did not seek to remand. When Fandom moved to dismiss Plaintiff Shah's initial complaint for failure to state a claim under Rule 12(b)(6), Plaintiff chose to amend rather than oppose the motion, adding Plaintiff Jayden Kim. *See* Dkt. 11; Dkt. 13; Dkt. 15-1.

The First Amended Complaint ("FAC") alleges that when users visit Fandom's website, gamespot.com, Fandom's server "causes" the user's browser to install three pieces of software code from third parties (collectively, the "Accused Code"), which allegedly records the IP address of the device used to visit gamespot.com. Dkt. 15 ¶ 23. An IP address is a number that "enables

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal                                    - 1 -                        Case No. 3:24-cv-01062-RFL

a device to communicate with another device—such as a computer's browser communicating with a server." *See id.* ¶ 25. When Fandom's web server receives a user request to access gamespot.com, it uses the source IP address provided in the user request to send an HTTP response that contains instructions to the user's browser for how to display the website, including "what images to load, what text should appear, or what music should play." *See id.* ¶¶ 21, 22, 25, Figure 1. Plaintiffs claim to have visited gamespot.com website "multiple times" using browsers on their "desktop" computers. *Id.* ¶¶ 89, 96. Plaintiffs allege that upon visiting the website, Fandom caused the Accused Code to be installed on their web browsers. *Id.* ¶¶ 90, 97. According to Plaintiffs, the Accused Code is a "pen register" because it allegedly collected the IP addresses of Plaintiffs' desktop computers, which they argue violates California Penal Code Section 638.51.

On May 30, 2024, Fandom moved to dismiss the FAC, arguing that the Accused Code falls outside the statutory definition of pen register. Dkt. 20. In support of its motion, Fandom also asked the court to take judicial notice of legislative history of the pen register statute. Dkt. 20 at 7 n.20. In support of their briefing, Plaintiffs and Fandom both submitted supplemental authority, Dkt. 23 and Dkt. 31, showing two recent cases that have interpreted the pen register statute. On October 21, 2024, the Court denied Fandom's motion to dismiss. Dkt. 34.

## II. ARGUMENT

### A. The Court Should Grant Leave to Fandom to File a Motion to Reconsider

Under Local Rule 7-9, a party may seek leave of court to file a motion for reconsideration. The movant must show a material change in fact or law that was unknown to the movant despite reasonable diligence, the emergence of material fact or law after the order, or a failure by the court to consider material facts or dispositive legal arguments presented by the movant. *See* Civ. L.R. 7-9(b).

    i. <u>The Court Should Grant Leave to Reconsider Based on a Case Decided After Fandom's Motion to Dismiss</u>

*Rodriguez v. Plivo, Inc.* is a decision by a California court interpreting California Penal Code section 638.51(a). Hedley Decl., Ex. 1. *Rodriguez* was decided after the October 1 hearing

1  on Fandom's motion to dismiss, so Fandom was not able to submit it as supplemental authority.

2  *See* L.R. 7-3(d)(2) (allowing supplemental authority to be submitted only before the noticed

3  hearing date); Hedley Decl., Ex. 1 (dated October 2, 2024).  *Plivo* considered allegations

4  materially identical to Plaintiffs' allegations and asserted the same theory of liability:

| Allegations in Plaintiffs' FAC | Allegations in *Plivo* |
|---|---|
| "To make Defendant's Website load on a user's internet browser, the browser sends an 'HTTP request' or 'GET' request to Defendant's server where the relevant Website data is stored. In response to the request, Defendant's server sends an 'HTTP response' back to the browser with a set of instructions." Dkt. 15 ¶ 21. | "To make Defendant's Website load on a user's internet browser, the browser sends an 'HTTP request' or 'GET' request to Defendant's server where the relevant Website data is stored.  In response to the request, Defendant's server sends an 'HTTP response' back to the browser with a set of instructions." Hedley Decl., Ex. 2 ¶ 31. |
| "In addition, the server's instructions cause the Trackers to be installed on a user's browser. The Trackers then cause the browser to send identifying information—including the user's IP address—to GumGum, Audiencerate, and TripleLift." Dkt. 15 ¶ 23. | "In addition, the server's instruction cause at least one PR/TT beacon to be installed on a Website user's Internet browser.  The PR/TT beacon then causes the browser to send identifying information—including the user's IP address—to the PR/TT beacon's software provider." Hedley Decl., Ex. 2 ¶ 33. |
| "Moreover, GumGum stores a cookie in the user's browser cache. When the user subsequently visits Defendant's Website, the GumGum Tracker locates the cookie identifier stored on the user's browser. If the cookie is stored on the browser, the GumGum Tracker causes the browser to send the cookie along with the user's IP address to GumGum." Dkt. 15 ¶ 37. | "Moreover, the PR/TT beacon's developer stores a beacon or cookie with the user's IP address in the user's browser cache. When the user subsequently visits Defendant's Website, the PR/TT beacon instructs the user's browser to send the user's IP address through the beacon or cookie." Hedley Decl., Ex. 2 ¶ 39.<br><br>"The user's IP address is transmitted to the PR/TT beacon along with the cookie value." Hedley Decl., Ex. 2 ¶ 42. |

20  Yet the decision in *Plivo* is contrary to this Court's decision on these allegations and supports

21  Fandom's position that the California pen register statute does not apply to capturing a user's

22  voluntarily-sent IP address as a matter of law.

23    *Plivo* held that a process or device that merely records a sender's IP address is not a pen

24  register under California Penal Code section 638.51(a).  Hedley Decl., Ex. 1 at 4.  First, the

25  California court found that the IP address of a user visiting a website is not subject to the statute

26  because "Plaintiff voluntarily provided the information and could have no expectation of privacy

27  in it."  Hedley Decl., Ex. 1 at 3.  Second the court found that a device that collects a user's IP

28

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal                    - 3 -                    Case No. 3:24-cv-01062-RFL

address is not a pen register because "pen registers collect outgoing information", and so the mere collection of a *sender's* IP address lacks the functionality of a pen register. The court also reasoned that even if a user's IP address could locate a user's city and zip code, "this is not the type of sensitive data" subject to the statute. Hedley Decl., Ex. 1 at 3. Based on this reasoning, the Court granted the defendant's demurrer *without* leave to amend. Hedley Decl., Ex. 1 at 4.

    ii. <u>The Court Should Also Grant Leave to Reconsider Overlooked Material Allegations and Dispositive Law</u>

The Court should also consider the reasoning in *Palacios v. Fandom, Inc.*, another case from a California court that decided that California Penal Code section 638.51(a) only applies to outgoing information. Fandom submitted this case as supplemental authority after the briefing on its Motion to Dismiss without presenting argument, as required by the Court's rules. *See* Dkt. 31; L.R. 7-3(d)(2) (allowing a party to submit a copy of a new opinion "without argument"). Thus, although the Court referenced *Palacios* in its Order, it did not consider any argument on this case. Further, the Court only considered the case to state that it "relied upon legislative materials from the June 2015 Senate Amendments to CIPA." Yet the Court did not consider the reasoning in *Palacios*, which was not based solely on the June 2015 Senate Amendments to CIPA.

Instead, *Palacios* also relied on California case law which historically understood that "a pen register is a mechanical device which records the numbers dialed from a telephone." Dkt. 31, Ex. A at 4 (quoting *People v. Blair*, 25 Cal. 3d 640, 654 (1979)) (cleaned up). The allegations in *Palacios* mirror those in *Plivo* and are also nearly identical to Plaintiffs' allegations and asserted the same theory of liability:

| **Allegations in Plaintiffs' FAC** | **Allegations in *Palacios*** |
|---|---|
| "To make Defendant's Website load on a user's internet browser, the browser sends an 'HTTP request' or 'GET' request to Defendant's server where the relevant Website data is stored. In response to the request, Defendant's server sends an 'HTTP response' back to the browser with a set of instructions." Dkt. 15 ¶ 21. | "To make Defendant's Website load on a user's internet browser, the browser sends an 'HTTP request' or 'GET' request to Defendant's server where the relevant Website data is stored. In response to the request, Defendant's server sends an 'HTTP response' back to the browser with a set of instructions." Hedley Decl., Ex. 3 ¶ 31. |

| Allegations in Plaintiffs' FAC | Allegations in *Palacios* |
|---|---|
| "In addition, the server's instructions cause the Trackers to be installed on a user's browser. The Trackers then cause the browser to send identifying information—including the user's IP address—to GumGum, Audiencerate, and TripleLift." Dkt. 15 ¶ 23. | "In addition, the server's instruction cause at least one PR/TT beacon to be installed on a Website user's Internet browser. The PR/TT beacon then causes the browser to send identifying information—including the user's IP address—to the PR/TT beacon's software provider." Hedley Decl., Ex. 3 ¶ 33. |
| "Moreover, GumGum stores a cookie in the user's browser cache. When the user subsequently visits Defendant's Website, the GumGum Tracker locates the cookie identifier stored on the user's browser. If the cookie is stored on the browser, the GumGum Tracker causes the browser to send the cookie along with the user's IP address to GumGum." Dkt. 15 ¶ 37. | "Moreover, the PR/TT beacon's developer stores a beacon or cookie with the user's IP address in the user's browser cache. When the user subsequently visits Defendant's Website, the PR/TT beacon instructs the user's browser to send the user's IP address through the beacon or cookie." Hedley Decl., Ex. 3 ¶ 39.<br><br>"The user's IP address is transmitted to the PR/TT beacon along with the cookie value." Hedley Decl., Ex. 3 ¶ 42. |

Yet *Palacios* reached a decision contrary to the Court's Order, reasoning that the statutory definition merely broadened the category of information collected by a "pen register" to other electronic communication mediums. But it did not expand the long-standing definition that a pen register functions in capturing outgoing addressing information to rather capturing information about the device of a sender of a communication. Dkt. 31, Ex. A at 4. In other words, even if the technology of a pen register evolves, a plaintiff must still allege the functionality of a pen register to state a claim. Thus, *Palacios* relied on long-standing California law that the Court did not consider as part of its interpretation, and only used the legislative history of the pen register statute as additional support for this interpretation.

The Court also did not consider the full legislative history of the pen register statute.[1] Fandom requested that the Court take judicial notice of such legislative history and there is no indication in the Court's Order that it did so. *See* Dkt. 20 at 7 n.2 (requesting judicial notice of

---

[1] The Court cited to a portion of the legislative history in the context of discussing *Palacios* and found that it did not support an argument that the pen register statute was limited to traditional forms of communication such as telephones. *See* Dkt. 34 at 7 n.2. But there is no indication that the Court considered the materials as a whole, or addressed whether the legislative materials show that a pen register is limited to the collection of a recipient's address for outgoing communications.

1  legislative history at Dkts. 20-12 to 20-14); Dkt. 34 (order that does not grant request for judicial
2  notice). This history shows that the California legislature explicitly and repeatedly intended that
3  a "pen register" collects only outgoing phone numbers from a telephone line. *See* Dkt. 20-12 at
4  5 ("Historically, 'pen registers' are used to record outgoing numbers from a particular telephone
5  line."); Dkt. 20-13 ("Pen registers and track and trace devices generally track incoming and
6  outgoing telephone calls."); Dkt. 20-14 ("One of the tools available to law enforcement is called
7  a 'pen register' which allows law enforcement officers to record all outgoing numbers from a
8  particular telephone line."). The legislature understood there was a distinction between a "pen
9  register," which captures "outgoing numbers" from a sender, and a "trap and trace" device, which
10 records "numbers that call in" to a recipient. Dkt. 20-12 at 5. There is no dispute that the IP
11 address of someone who *sends* a communication is neither. It is reasonable to believe that this
12 interpretation tracks the privacy interests the statute is meant to protect—the identity of who
13 someone contacts and who contacts them, not an IP address voluntarily sent to another party
14 without any restriction on how it can be used or disclosed.

15      The California legislature has never suggested that the capture or disclosure of a sender's
16 IP address alone would fall under the pen register statute. *See* Dkts. 20-12 to 20-14; *see also* A.B.
17 1924 Assem., 4/19/2016 ("[P]en register/trap-and trace-device[s] . . . are telephone surveillance
18 devices used to record incoming and outgoing phone numbers") (showing no mention in the
19 legislative history of IP addressing or recording any information of a sender of a communication);
20 A.B. 1242 Assem., 8/26/2022 (same). To the extent that the collection of IP addresses is
21 regulated, it is regulated by the CCPA—which provides a comprehensive regulatory scheme
22 governing consumer data collection over the internet—not the pen register statute. *See* Cal. Civ.
23 Code §§ 1798.100 *et seq.*; *cf. Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal.
24 2020) (holding that collection of an IP address showing locations where a plaintiff accessed his
25 Facebook account "will not do for a privacy injury"). That the California Legislature specified
26 that the CCPA applies to an "Internet Protocol address" shows that it would include that language
27 if it intended to regulate the area. *See* Cal. Civ. Code § 1798.140(v)(1)(A). That the Legislature
28 did not use such language in the pen register statute despite recent amendments supports a finding

that it did not intend for it to cover IP addresses. Thus, a reconsideration of the materials in the RJN addressing the stated intent of the statute, and the functionality of a pen register, to capture outgoing addressing information, should be given a fresh look. On these bases, Fandom requests the Court grant it leave to file a motion for reconsideration.

### B. Alternatively, the Court Should Certify Its Order for Interlocutory Appeal

The Court should certify an order for an interlocutory appeal if it involves "a controlling question of law as to which there is substantial ground for difference of opinion" and an appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Su v. Siemens Indus., Inc.*, 2014 WL 4775163, at *2 (N.D. Cal. Sept. 22, 2014). The Court's decision satisfies each of these requirements.

#### i. The Order Presents a Controlling Legal Question that May Ultimately Terminate This Litigation

As discussed above, there is a dispute over whether the pen register statute applies to non-telephone communications and to the address of a sender of a communication. It is undisputed that Plaintiffs allege only that their own IP addresses were recorded in outbound, non-telephonic communications. Thus, these legal questions about the scope of the pen register statute are controlling and dispositive.

#### ii. There Is Substantial Ground for a Difference of Opinion

There are also substantial grounds for a difference of opinion on the legal issues decided in the Court's Order. Under Ninth Circuit law, "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

As explained in Fandom's Motion to Dismiss, this case is one of many recent and nearly identical cases filed by Plaintiffs' counsel that seek to apply the pen register statute to basic internet functionality. *See* Dkt. 20-1 ¶¶ 3–11. Fandom is unaware of and Plaintiffs have not cited any appellate case ruling on whether the pen register statutes apply to the collection of the IP address of a sender of a communication. This nascent issue is especially appropriate for fast,

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal            - 7 -            Case No. 3:24-cv-01062-RFL

interlocutory review because the Court's Order would subject nearly every website operator to criminal liability. *See* Cal. Penal Code § 638.51(c) (violating the pen register statute is a crime punishable by fine or imprisonment, including under Cal. Penal Code § 1170(h)); Cal. Penal Code § 1170(h) (providing a range of criminal penalties for felonies, including imprisonment for up to three years); *see also* Dkt. 20-15 at 6 (noting that "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce" because it would render liable "every single entity voluntarily visited by a potential plaintiff").

Nor is there any reasonable dispute that fair-minded jurists could reach contradictory conclusions on these issues. And discussed above and in Fandom's Motion to Dismiss, at least three courts have already come to a different conclusion. *See* Hedley Decl., Ex. 1 (Los Angeles Superior Court holding that a process or device that records an IP address is not a pen register); Dkt. 20-15 at 1, 6 (voluntary provision of an IP address to a website "under the guise of visiting" the site raises an issue of "consent" negating a pen register claim); Dkt. 31, Ex. A (holding that a process or device that records addressing information of the sender of an outbound communication is not a pen register). The conflict is especially pronounced for Fandom because it is on the receiving end of both this Court's Order and a contradictory order from a California court. *Compare* Dkt. 34 *with* Dkt. 31, Ex. A.

      iii. <u>A Stay Is Warranted if the Ninth Circuit Grants an Interlocutory Appeal</u>

This Court has discretion to stay the proceeding pending any interlocutory appeal. 28 U.S.C. § 1292(b). If this Court certifies its Order for interlocutory review and the Ninth Circuit agrees to hear the appeal, the stay of the proceedings is appropriate and will prevent unnecessary expenditures of both time and resources from the parties and Court. Fandom thus requests that the Court stay proceedings until the Ninth Circuit determines whether it will grant interlocutory review and, if such review is granted, during the pendency of the appeal.

### III. CONCLUSION

For these reasons, Fandom requests that the Court grant leave for Fandom to file a motion to reconsider the Order. Alternatively, the Court should certify its Order for interlocutory appeal.

Mot. for Leave to File
Mot. to Reconsider or Certify
Interlocutory Appeal   - 8 -   Case No. 3:24-cv-01062-RFL

|   |   |
|---|---|
| Dated: November 15, 2024 | Respectfully submitted,<br>TYZ LAW GROUP PC<br><br>*/s/Deborah Hedley*<br>Deborah Hedley<br><br>Attorneys for Defendant<br>FANDOM, INC. |