1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          klynn@bursor.com
          jwilner@bursor.com

2

3

4

5

6

7

**BURSOR & FISHER, P.A**.
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: mroberts@bursor.com

8

9

10

11

*Attorneys for Plaintiff*

12

# UNITED STATES DISTRICT COURT

13

## NORTHERN DISTRICT OF CALIFORNIA

14

15

VISHAL SHAH, and JAYDEN KIM, on behalf
of themselves and all others similarly situated,

16

Plaintiffs,

17

v.

18

FANDOM, INC.,

19

Defendant.

20

21

Case No. 3:24-cv-01062-RFL

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date:  December 16, 2025
Time: 10:00 a.m.
Ctrm: 15, 18th Floor
Judge: Hon. Rita F. Lin

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 16, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 15, 8th Floor, San Francisco, California 94102 in the courtroom of Hon. Ria F. Lin, Plaintiffs Vishal Shah and Jayden Kim ("Plaintiff"), by and through their undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Bursor & Fisher, P.A. as Class Counsel, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time and place for a final approval hearing and a schedule leading up to the final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met. This motion is based on Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, the accompanying Declaration of Max S. Roberts and attachments thereto, including the Settlement Agreement, the Declaration of Cameron R. Azari of Epiq Systems, Inc., the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: October 16, 2025                   Respectfully submitted,

By: */s/ Max S. Roberts*
                                                             Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        klynn@bursor.com
        jwilner@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..........................................................2

SUMMARY OF THE PROPOSED SETTLEMENT ...........................................................2

I.      CLASS DEFINITION ...............................................................................................2

II.     MONETARY RELIEF ..............................................................................................3

III.    RELEASE ...................................................................................................................5

IV.     SERVICE AWARDS .................................................................................................5

V.      ATTORNEYS' FEES AND EXPENSES ..................................................................6

VI.     PAYMENT OF NOTICE AND ADMINISTRATIVE FEES....................................6

ARGUMENT ........................................................................................................................7

I.      THE SETTLEMENT CLASS SATISFIES FED R. CIV. P. 23(A) AND 23(B)(3) .............7

        A.      Rule 23(a)(1) – Numerosity ..........................................................................7

        B.      Rule 23(a)(2) – Commonality ........................................................................7

        C.      Rule 23(a)(3) – Typicality .............................................................................7

        D.      Rule 23(a)(4) – Adequacy .............................................................................7

        E.      Rule 23(b)(3) – Predominance And Superiority ...........................................8

II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...........9

        A.      Fed. R. Civ. P. 23(e)(2)(A) – Plaintiffs And Their Counsel Have
                Adequately Represented The Class ................................................................9

        B.      Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was
                Negotiated At Arm's Length ..........................................................................9

        C.      Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate ...............10

                1.      The Costs, Risks, And Delay Of Trial And Appeal .......................10

                2.      The Effectiveness Of Any Proposed Method Of Distributing
                        Relief To The Class ........................................................................12

                3.      The Terms Of Any Proposed Award Of Attorney's Fees .............12

                4.      Any Agreement Required To Be Identified ...................................13

       D.      Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats
Settlement Class Members Equally ........................................................................... 13

III.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ............................... 14

IV.     THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A
FINAL APPROVAL HEARING ........................................................................................ 15

CONCLUSION ....................................................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 14

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ......................................................................... 5

*Ching v. Siemens Indus., Inc.*,
  2014 WL 2926210 (N.D. Cal. June 27, 2014)..................................................... 11

*Collins v. Cargill Meat Sols. Corp.*,
  274 F.R.D. 294 (E.D. Cal. 2011) ......................................................................... 14

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025) .......................................................................... 8

*Fregosa v. Mashable, Inc.*,
  2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ....................................................... 10

*G. F. v. Contra Costa County*,
  2015 WL 4606078 (N.D. Cal. July 30, 2015) ....................................................... 9

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................. 1

*Greer v. Dick's Sporting Goods, Inc.*,
  2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ...................................................... 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)............................................................................ 8, 9

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)................................................................................... 13

*Hazel v. Prudential Financial, Inc.*,
  2023 WL 3933073 (N.D. Cal. June 9, 2023)....................................................... 11

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................................... 13

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ............................................... 9, 10, 12

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...................................................... 7

*In re Google Referrer Header Privacy Litig.*,
  2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ................................................ 14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ........................................................ 7

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ............................................. 6, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.* Liab. Litig.,
  746 F. App'x 655 (9th Cir. 2018) ............................................................ 13

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ............................................... 7

*Katz-Lacabe v. Oracle Am., Inc.*,
  2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ............................................. 10

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ................................................. 9

*Licea v. Hickory Farms LLC*,
  2024 WL 1698147 (Los Angeles Cnty. Super. Ct. Mar, 13, 2024) ..................... 1

*Montera v. Premier Nutrition Corp.*,
  2025 WL 751542 (N.D. Cal. Mar. 10, 2025) ................................................. 3

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 11

*Norton v. LVNV Funding, LLC*,
  2021 WL 3129568 (N.D. Cal. July 23, 2021) .............................................. 12

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) ...................................................... 11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................. 8

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ......................................................... 12

*Torres v. Prudential Financial, Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ............................................ 8, 11

*Torres v. Prudential Financial, Inc.*,
  2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ............................................. 1, 11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................ 12

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022) ........................................................................ 3

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ....................................................................... 9

*Zaklit v. Nationstar Mortg. LLC*,
  2017 WL 3174901 (C.D. Cal. July 24, 2017) ............................................... 9

**STATUTES**

28 U.S.C. § 1715(b) ............................................................................................ 15

Cal. Pen. Code § 637.2(a)(1) ............................................................................... 3

Cal. Pen. Code § 638.50 ........................................................................... 1, 4, 7, 10

Cal. Pen. Code § 638.51 ...................................................................................... 11

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... 14

Fed. R. Civ. P. 23(a) .......................................................................................... 7, 9

Fed. R. Civ. P. 23(b) .......................................................................................... 7, 8

Fed. R. Civ. P. 23(c)(2) ...................................................................................... 14

Fed. R. Civ. P. 23(e) ................................................................................ 9, 10, 12, 13

**OTHER AUTHORITIES**

Senate Bill 690 ................................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In January 2024, Plaintiffs and their counsel brought a relatively novel theory of liability: that Defendant's installation and use of third-party Trackers[1] that collected IP addresses and other identifiers from users to Defendant's Website constituted a "pen register" under Cal. Pen. Code § 638.50(b). At that time, only one court had sustained something analogous to this theory. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). By contrast, several state courts had rejected the theory by the time any motion to dismiss was brought. *See*, *e.g.*, *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Los Angeles Cnty. Super. Ct. Mar, 13, 2024). Against these odds, Plaintiffs and their counsel prevailed at the motion to dismiss phase (and on a motion for reconsideration and interlocutory appeal), survived *legislative* threats, and reached a settlement that puts significant relief in the hands of California consumers. In the process, Plaintiffs and their counsel cemented a theory that has now been adopted by federal courts and expanded into other areas of litigation such as cases against data brokers collecting similar identifiers.

Specifically, the Settlement—reached with the assistance of a neutral mediator, Hon. Robert B. Freedman (Ret.)—creates a $1.2 million non-reversionary fund from which any of the hundreds of thousands of Settlement Class Members can make a claim for a *pro rata* share. The Settlement obviates the need for expensive, protracted litigation in this novel arena, where claims that are certified as a class may ultimately be tossed at summary judgment. *See generally Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) (granting summary judgment against plaintiff on CIPA § 631 claim after granting class certification).

Thus, the Settlement falls within the range of possible approval and warrants preliminary approval. Accordingly, Plaintiffs respectfully request that the Court enter an order in the form of the attached Proposed Preliminary Approval Order that (i) grants preliminary approval of the Settlement; (ii) conditionally certifies the Settlement Class; (iii) designates Plaintiffs as the Class Representatives and appoints Bursor & Fisher, P.A. as Class Counsel; (iv) appoints of Epiq Systems, Inc. ("Epiq")

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement. *See* Roberts Decl. Ex. 1.

as the Settlement Administrator and establishes procedures for giving notice to members of the Settlement Class; (v) approves forms of notice to Settlement Class Members; (vi) mandates procedures and deadlines for exclusion requests and objections; and (vii) sets a date, time and place for a final approval hearing, and further proceedings leading up to that hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this matter are discussed in detail in the Roberts Declaration. *See* Roberts Decl. ¶¶ 4-17.

## SUMMARY OF THE PROPOSED SETTLEMENT

### I.    CLASS DEFINITION

The Settlement Class consists of "all persons who accessed www.gamespot.com, or any of its subdomains, in California and had their information collected by the Trackers between January 5, 2023 to the present," meaning the Effective Date of the Settlement. Settlement ¶ 1.28.  Pursuant to District Guideline 1(a), the Settlement Class differs from the operative Complaint in that it includes the subdomains of gamespot.com, such as https://gamefaqs.gamespot.com/.  The reason for this is that these subdomains incorporate the same Trackers as the main gamespot.com website. Roberts Decl. ¶ 19.

Although Plaintiffs subpoenaed several of the Third Parties operating the Trackers, the Parties realized they could not obtain the precise number of Settlement Class Members without extensive and costly (and contentious) third-party discovery that would be tantamount to Plaintiffs proving their case on the merits.  Roberts Decl. ¶¶ 14-16.  Defendant has also advised that there were approximately 4.3 million unique IP addresses associated with devices located in California that accessed GameSpot online during the class period.  *Id.* ¶ 11.  While the number of IP addresses is greater than the number of corresponding class members because people can access the website from multiple different IP addresses, the Washington Post has reported that "the United States [has] five available IP addresses per person."[2]  *Id.* ¶ 20.  Therefore, if the number of IP addresses is divided by

---

[2] Available at https://www.washingtonpost.com/graphics/business/world-ip-addresses/.

five, that would equal 860,000 Settlement Class Members. *Id.* However, Plaintiffs cannot attest to the accuracy of this estimate. *Id.*

## II.        MONETARY RELIEF

Defendant has agreed to establish common fund of $1,200,000 to cover all claims filed by Settlement Class Members, as well as the costs of settlement administration, services awards, and attorneys' fees, costs, and expenses that the Court may approve.  Settlement ¶¶ 1.30, 2.1.  Settlement Class Members can receive a *pro rata* cash payment which will be determined by the number of claims filed, but in no event shall any Settlement Class Member receive more than $5,000.  *Id.* ¶ 2.1(b).  No money will revert to Defendant. *Id.* ¶ 1.30.  "To the extent that any checks issued to a Settlement Class Member are not cashed within one hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a *pro rata* basis."  *Id.* ¶ 2.1(d).  "To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall revert to" a *cy pres* organization agreed upon by Proposed Class Counsel and Defendant and approved by the Court.  *Id.*

Pursuant to District Guideline 1(c), had Plaintiffs prevailed at trial, Cal. Pen. Code § 637.2(a)(1) provides for statutory damages of $5,000 for each violation.  However, assuming there are 860,000 Settlement Class Members per the above, Defendant's liability would be $4.3 billion.  Such an award may have been found to be excessive under Ninth Circuit precedent.  *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of $925 million in statutory damages); *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding reduced statutory damages after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals").

Given this, the better comparison is Plaintiffs' actual damages.  Plaintiffs' theory is one of unjust enrichment: that by installing and using the Trackers, Defendant was able to identify Settlement Class Members, and therefore, sell their information to advertisers for more money than it otherwise would have been able to without installing and using the Trackers.  Roberts Decl. ¶ 21.

To that end, Plaintiffs' actual damages would have been the difference between what their information was sold for with the Trackers, and what it would have been sold for without them. *Id*. For example, Website traffic from Plaintiff Kim's browser shows that an advertiser was willing to pay approximately $0.79 cost per mille ("CPM") to show an advertisement to Plaintiff Kim:

```
"cpm": 0.792852,
"cpm_publisher_currency": 0.792852,
"publisher_currency_code": "$",
"publisher_currency_codename": "USD",
"content_source": "rtb",
"ad_type": "banner",
```

Roberts Decl. ¶¶ 22-28.[3]  So, Plaintiff Kim's information was sold for $0.79 CPM with the Trackers installed, meaning Plaintiff's actual damages would likely be a few cents on the dollar. *Id.* ¶ 28.  By comparison, the Settlement will likely provide a recovery of $130-$216.67 per Settlement Class Member based on the expected number of Approved Claims. *Id*; *see also* Declaration of Cameron R. Azari ("Azari Decl.") ¶ 44.

Pursuant to District Guideline 11, Plaintiff notes this is the second-ever settlement reached involving claims brought under Cal. Pen. Code §§ 638.50-638.51.  Thus, the best comparison is the only other settlement involving these provisions, which was also reached by Proposed Class Counsel:

| Case | Settlement Amount | IP Addresses | Recovery Per IP | Expected Payout Per Class Member |
|------|------------------|--------------|-----------------|----------------------------------|
| ***Shah v. Fandom, Inc.,* Case No. 3:24-cv-1062 (N.D. Cal.)** | **$1,200,000** | **4.3 million** | **$0.28** | **$130-$216.67[4]** |
| *Mirmalek v. Los Angeles Times Commc'ns, LLC,* Case No. 3:24-cv-1797 (N.D. Cal.) | $3,850,000 | 9 million | $0.43 | $40.32-$216.63[5] |

---

[3] The operative Complaint in *Deivaprakash v. Condé Nast Digital*, Case No. 3:25-cv-4021, ECF No. 1-1 (N.D. Cal. May 8, 2025), which is also pending before this Court and was also filed by Proposed Class Counsel, describes this process in greater detail, as it represents a more fulsome understanding of the technology at issue in this litigation and others.  Roberts Decl. ¶ 12; *see also* Roberts Decl. Ex. 2 at ¶¶ 12-15, 133-170.

[4] Epiq expects there to be approximately 3,000-5,000 Approved Claims. Azari Decl. ¶ 44.  Therefore, Plaintiffs have used this estimate for the expected payout.  Further, Epiq estimates the cost of notice to be between $130,000-$150,000.  *Id.* ¶ 45.  Accordingly, Plaintiffs have used the median notice cost ($140,000) for this estimate.

[5] *See Mirmalek v. Los Angeles Tims Communications, LLC*, Case No. 3:34-cv-1797, ECF No. 45 at 4 (N.D. Cal. Oct. 15, 2025).

1
2
3

This Settlement thus compares favorably to *Mirmalek* in that the Settlement Class here is roughly half the size of *Mirmalek*, yet the expected payout per Settlement Class Member is roughly the same.

4

## III.    RELEASE

5
6
7
8
9
10
11
12

In exchange for the relief described above, Defendant and each of the "Released Parties," as defined in Settlement ¶ 1.24, will be released from claims involving the alleged disclosure, use, interception, or recording of Settlement Class Members' information by the Trackers.  *See* Settlement ¶¶ 1.23, 3.1-3.2.  Pursuant District Guideline 1(b), the release is consistent with Plaintiffs' claims, which involve the collection and use of their information by the third parties operating the Trackers (as caused by Defendant's installation and use of the same).  *See*, *e.g.*, FAC ¶¶ 36-38, 45-48, 55-58, 73-88.  The release thus covers claims stemming from the collection and use of this information by the Trackers, including those related to Plaintiffs' and Settlement Class Members' rights to privacy.

13
14
15
16

Pursuant to District Guideline 1(d), Plaintiffs are not aware of any other case affected by the Settlement because, "[f]or the avoidance of doubt, the released claims shall not apply to or include the claims (class or individual) asserted in *Jackson, et al. v. Fandom Inc.*, No. 22-cv-4423-JST (N.D. Cal.)."  Settlement ¶ 1.23.

17

## IV.    SERVICE AWARDS

18
19
20
21
22
23
24
25
26

Subject to the Court's approval, Defendant has agreed to pay a service award to each Plaintiff in the amount of $5,000 each.  Settlement ¶ 8.3.  This is a "presumptively reasonable" service award.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  Plaintiffs have spent substantial time on this action, assisted with the drafting of the Complaint, had their devices imaged and produced discovery from the same in conjunction with the Parties' mediation, have been in contact with counsel frequently and has stayed informed of the status of the action, including settlement, and were willing to sit for a deposition if necessary. *See* Roberts Decl. ¶ 48. Settlement Class Members will be notified of Plaintiffs' intent to seek service awards and the amount sought in the Long Form Notice.  *See* Settlement Ex. B.

27
28

## V.    ATTORNEYS' FEES AND EXPENSES

Proposed Class Counsel will apply to the Court for an award of attorneys' fees of no more than 29.12% (or $349,472.52) of the Settlement Fund.  Settlement ¶ 8.1.  A 29.12% fee award "is within the usual range of 20-30% in common fund cases."  *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14 (N.D. Cal. May 25, 2023).  In addition, Proposed Class Counsel will also apply for $50,527.48 in already incurred reasonable litigation costs and expenses that were necessary for the prosecution of this Action, as well as any future costs related to seeking Final Approval and administering the Settlement.  Roberts Decl. ¶¶ 39-40.

## VI.    PAYMENT OF NOTICE AND ADMINISTRATIVE FEES

The Parties propose that Epiq act as the Settlement Administrator.  Settlement ¶ 1.27.  Pursuant to District Guidelines 2(a) and 2(b), Epiq was selected after a competitive bidding process in which three settlement administrators submitted proposals: Epiq, Kroll Administration, LLC, and Simpluris, Inc.  Roberts Decl. ¶ 51.  All three administrators' proposed plans included a combination of publication notice designed to reach at least 70% of the Settlement Class.  *Id*.  The Parties concluded that Epiq's plan provided the best opportunity to reach the greatest number of Class Members and allow for the highest potential claims rate for this case at a competitive cost.  *Id.* ¶ 52.  The Azari Declaration describes the notice plan in full, as well as Epiq's credentials, procedures for securely handling class member data, and Epiq's acceptance of responsibility and maintenance of insurance in case of errors.  *See* District Guideline 2(b); *see also* Azari Decl. ¶¶ 4-43.

In accordance with District Guideline 2(a), Epiq has been engaged by Bursor & Fisher, P.A. (or engaged by other counsel in cases involving Bursor & Fisher) on 26 other class action settlements over the last two years.  Azari Decl. ¶¶ 7-8.  Pursuant to District Guideline 1(f), Plaintiffs estimate that 3,000-5,000 Settlement Class Members are likely to submit a Claim Form.  *See id.* ¶ 44.  In accordance with District Guideline 2(b), the cost of settlement administration is estimated to be between $130,000-$150,000 (*id.* ¶ 45), or approximately 10.83%-12.50% of the value of the Settlement Fund.  This amount will be paid out of the Settlement Fund and is reasonable.  The costs of the notice program are attributable to media notice (which is needed to "reach … Settlement Class

Members"). *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (approving administration costs of 20% of fund).

## ARGUMENT

## I. THE SETTLEMENT CLASS SATISFIES FED R. CIV. P. 23(A) AND 23(B)(3)

### A. Rule 23(a)(1) – Numerosity

In the Ninth Circuit, "numerosity is satisfied if the class includes forty or more members." *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022) (cleaned up). Here, there are estimated to be 860,000 Settlement Class Members. Roberts Decl. ¶ 20.

### B. Rule 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (cleaned up). "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (cleaned up). Here, multiple common questions of fact and law exist, including but not limited to whether the Trackers are "pen registers" pursuant to Cal. Penal Code § 638.50(b); whether Defendant installed or used the Trackers; and whether Defendant is an "electronic communications services provider."

### C. Rule 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiff be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). Here, the claims of the named Plaintiffs are typical of the claims of the Settlement Class because the named Plaintiffs, like all other members of the Class, visited the GameSpot Website and had their IP addresses and other information collected by the Trackers, which were installed and used by Defendant. *See* FAC ¶¶ 89-101.

### D. Rule 23(a)(4) – Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their

counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).

As to the first inquiry, Plaintiffs and Proposed Class Counsel have no conflicts of interest with the Class. *See* Roberts Decl. ¶¶ 46, 50. Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving Defendant's common course of conduct and obtaining redress. *Id.* ¶ 50. As to the second inquiry, Plaintiffs and their counsel vigorously prosecuted this action and will continue to do so through final approval. *Id.* ¶¶ 35-36, 38, 48. Plaintiffs and counsel brought a novel theory of liability, defeated a motion to dismiss and motion for reconsideration/interlocutory appeal, conducted discovery in advance of the mediation, and attended a mediation with Hon. Robert B. Freedman (Ret.). *Id.* ¶ 35. In addition, Plaintiffs' counsel conducted significant research regarding the technology at issue, including data brokers and real-time bidding. *Id.* ¶ 35(vii). Plaintiff's counsel also has extensive experience litigating privacy cases, particularly under the CIPA. *Id.* ¶¶ 44-45; *see also id.* Ex. 5 (firm resume of Bursor & Fisher, P.A.). And Plaintiffs have remained engaged in the litigation, including communication with their counsel, reviewing settlement documents, and having their devices imaged, which made their devices unusable for a day-long period. Roberts Decl. ¶ 48.

**E.     Rule 23(b)(3) – Predominance And Superiority**

Fed. R. Civ. P. 23(b)(3) requires Plaintiffs to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, as courts in this District have found in other CIPA litigation, predominance is readily met. *See Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *4-9 (N.D. Cal. Nov. 26, 2024) (certifying class under CIPA § 631); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 587 (N.D. Cal. 2025) (same as to CIPA § 632).

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Courts have found that, even in cases like this one seeking statutory damages under the CIPA, superiority is met. *See Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *10 (C.D. Cal. July 24, 2017) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.") (cleaned up).

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Fed. R. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." To make this determination, the Court evaluates the factors set forth in that rule. *Id.* Each factor is met here.[6]

### A.    Fed. R. Civ. P. 23(e)(2)(A) – Plaintiffs And Their Counsel Have Adequately Represented The Class

This factor is met for the same reasons as Plaintiffs and Proposed Class Counsel meet the adequacy prong under Fed. R. Civ. P. 23(a)(4). *See* Argument § I.D, *supra*; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

### B.    Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated At Arm's Length

Both Proposed Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at *5; *see also* Roberts Decl. ¶¶ 33, 35, 44-45. Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations facilitated by a neutral mediator," Hon. Robert B. Freedman (Ret.). *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13

---

[6] Courts in this Circuit also evaluate the reasonableness of settlements under the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998). These factors "substantively track those provided in [current version of] Rule 23(e)(2)." *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020). Thus, satisfaction of Fed. R. Civ. P. 23(e)(2) is commensurate with satisfaction of the *Hanlon* factors.

(N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (cleaned up); *see also* Roberts Decl. ¶¶ 3, 10, 13.

**C.    Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate**

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6.

Here, the relief provided for compares favorably to Plaintiffs' potential actual damages and the only other class settlement under CIPA § 638.51. *See* Summary Of The Settlement § II, *supra*. Further, all other factors weigh in favor of preliminary approval.

*1.    The Costs, Risks, And Delay Of Trial And Appeal*

While Plaintiffs contend their CIPA claim maps cleanly onto the plain text of the statute, their theory of liability was certainly novel. At the time Plaintiffs brought their claim, only one federal court had held that CIPA §§ 638.50-638.51 applied to internet communications, and several state courts had rejected Plaintiffs' theory of liability before this Court issued its Motion to Dismiss Order. *See* Roberts Decl. ¶ 30. Certainly, the authority has moved in Plaintiffs' favor in the last year (thanks, in no small part, to the work of Plaintiffs and their counsel). *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *2 (N.D. Cal. Oct. 9, 2025) ("Several judges in this district, including Judges Lin [B&F decisions], Orrick, Pitts, Ryu [B&F decision], Tigar, and [Breyer] [B&F decisions], have held that such allegations suffice at the pleading stage."). But in January 2024, Plaintiffs and their counsel were breaking new ground. *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024) ("The novelty and scope of Plaintiffs' privacy allegations made this a particularly risky case to litigate. Unlike many class actions … Class Counsel independently investigated, documented, and innovatively challenged the underlying business model of one of the largest corporations in the world.").

1    Further, other CIPA litigation in this District illustrates the risks inherent in such novel data

2    privacy litigation.  Plaintiffs survived a motion to dismiss and a motion for reconsideration.  *See*

3    *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023) (denying motion to

4    dismiss CIPA § 631 claim).  Plaintiffs may have even certified a class, and they are confident they

5    would.  Roberts Decl. ¶ 34; *see also Torres*, 2024 WL 4894289 (certifying CIPA § 631 class).  But

6    if discovery showed the technology did not map as cleanly onto the statute as Plaintiffs allege, then

7    they would lose at summary judgment after years of costly and contentious litigation.  *Torres*, 2025

8    WL 1135088 (granting motion for summary judgment against plaintiff on CIPA § 631 claim).

9    In addition, the risks Plaintiffs faced here were not just in the courtroom, but in the legislature.

10   As this Court held, "[t]o the extent that Fandom believes the statute may impose too many burdens

11   when applied to the realities of modern technologies … the question of whether the statute's scope

12   should be narrowed ultimately rests with the Legislature, not the courts."  *Shah v. Fandom, Inc.*, 754

13   F. Supp. 3d 924, 933 (N.D. Cal. 2024).  A number of businesses took this message to heart, pushing

14   for the enactment of California Senate Bill 690 that sought to add a retroactive, "commercial business

15   purposes" exception to multiple provisions of the CIPA, including CIPA § 638.51.  Roberts Decl.

16   ¶ 32.  After strong opposition, the retroactive provisions of the bill were removed and the bill is

17   currently "frozen" in a two-year cycle.  *Id.*  Nonetheless, the bill remains pending.  *Id.*  Thus, there

18   was and remains a considerable possibility that Plaintiffs could have prevailed on every element of

19   their claim only to have Defendant snatch victory from the jaws of defeat in the legislature.  *Id.*

20   Last, all of these risks are compounded by the defenses Defendant—represented by

21   sophisticated and experienced counsel—would raise in this matter, including that Settlement Class

22   Members are entirely anonymous and therefore not ascertainable, and that the Court should revisit

23   the applicability of the statute to the instant claims considering other authorities.  *Id.* ¶ 33.

24   As such, "settlement is favored where, as here, significant procedural hurdles remain."  *Ching

25   v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014); *see id.* ("Avoiding such

26   unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as

27   the Court."); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

28

1    526 (C.D. Cal. 2004) (when considering the "vagaries of litigation," the "significance of immediate

2    recovery by way of the [proposed] compromise" is much preferable "to the mere possibility of relief

3    in the future, after protracted and expensive litigation").

4               2.    *The Effectiveness Of Any Proposed Method Of Distributing*
                    *Relief To The Class*

5           "A claims processing method should deter or defeat unjustified claims, but the court should

6    be alert to whether the claims process is unduly demanding."  2018 Advisory Note to Fed. R. Civ. P.

7    23(e)(2)(C)-(D).  Here "Class Members must submit a Claim Form in order to receive any cash

8    award.  However, the Claim Form is a simple one-page form that asks each potential Class Member

9    to answer a single question—namely," to attest that they accessed gamespot.com or its subdomains

10   in California during the Class Period.  *See Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *11

11   (N.D. Cal. July 23, 2021); *see also* Settlement Ex. A.  Such a proposed method of distribution is

12   reasonable and "not burdensome."  *Norton*, 2021 WL 3129568, at *11.  Further, a claims process is

13   necessary given Defendant cannot directly contact and pay Settlement Class Members.  Roberts

14   Decl. ¶ 51.

15              3.    *The Terms Of Any Proposed Award Of Attorney's Fees*

16          Proposed Class Counsel will apply to the Court for an award of attorneys' fees of no more

17   than 29.12% (or $349,472.52) of the Settlement Fund.  Settlement ¶ 8.1. The Court need not

18   "determine attorney's fees at the preliminary approval stage" and Proposed Class Counsel will "fully

19   address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys'

20   Fees, Costs, and [Service Award]." *Hilsley*, 2020 WL 520616, at *7.  However, the proposed fee

21   request of 28.75% of the Settlement Fund "is within the usual range of 20-30% in common fund

22   cases." *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14.

23          The reasonableness of this award is confirmed by a lodestar crosscheck.  As of October 14,

24   2025, Proposed Class Counsel has billed a total of 459.3 hours to this matter for a lodestar of

25   $286,467.50.  Roberts Decl. ¶¶ 37-38; *see also id.* Ex. 3.  The maximum requested fee award thus

26   represents a multiplier of 1.22 based on Proposed Class Counsel's current lodestar, which is

27   reasonable.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); *Steiner*

28

*v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85). This is especially so given Proposed Class Counsel will spend additional time on this matter assisting with the administration of notice and preparing for and moving for final approval, thus reducing the lodestar multiplier. Roberts Decl. ¶ 36; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things … assist in implementing the settlement").

In addition, Proposed Class Counsel will also apply for at least $50,527.48 in reasonable litigation costs and expenses that were necessary for the prosecution of this Action. Roberts Decl. ¶¶ 39-40; *see also id.* Ex. 4; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client.") (cleaned up). These costs consist of court fees, research fees, service fees, expert fees, travel expenses related to the motion to dismiss hearing and mediation, subpoenas to the Third Parties, and the imaging of Plaintiffs' devices; and (ii) any additional costs related to seeking approval and administration of the Settlement. Roberts Decl. ¶ 39; *see also id.* Ex. 4. Should Proposed Class Counsel incur additional expenses related to securing Final Approval or administering the Settlement, Proposed Class Counsel will apply for reimbursement of those expenses as well. *Id.* ¶ 40.

### 4. Any Agreement Required To Be Identified

Other than the Settlement, no such agreement exists.

### D. Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally

Each Settlement Class Member who submits an Approved Claim by the Claims Deadline will receive the same *pro rata* portion of the Settlement Fund, not to exceed $5,000. Settlement ¶ 2.1(b). Thus, the Settlement does not "improperly grant preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018).

### III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Fed. R. Civ. P. 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," although actual notice is not required.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Pursuant to District Guideline 3, "[t]he notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstance."

Here, the Parties have proposed Epiq as the Settlement Administrator.  The notice program involves publication (digital) notice for the Settlement Class, coupled with methods to ensure valid claims and weed out potentially fraudulent claims.  *See, e.g.*, Azari Decl. ¶¶ 21-39.  Such notice is necessary because (i) Defendant does not have the contact information for Settlement Class Members, and (ii) the steps to acquire such a list of Settlement Class Members would essentially amount to Plaintiffs proving their claim, making it costly, contentious, and time-consuming.  Roberts Decl. ¶¶ 16, 51. Consistent with the Federal Judicial Center's 2010 Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide,[7] the notice program is designed to reach at least 70% of the Settlement Class.  Azari Decl. ¶ 47.  Thus, the proposed notice plan represents the best notice practicable, and similar notice programs have been approved by courts in this Circuit.  *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *7 (N.D. Cal. Mar. 26, 2014) (allowing online media notice because "direct notice to class members by mail, e-mail or other electronic individualized means is impractical.").

Consistent with District Guidelines 3-5, the proposed notice plan also includes CAFA notice (Azari Decl. ¶ 20); a settlement website and toll-free telephone number (*id.* ¶¶ 40-42); a clear and informative notice form that provides a summary of the claims and class action procedures, information about accessing the docket via PACER, information on how to submit a claim, and notice of the Final Approval Hearing (Settlement Ex. B); and non-burdensome instructions and procedures for opting out of or objecting to the Settlement (*id.*).  This satisfies the notice required under Fed. R. Civ. P. 23.  *See Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal.

---

[7] Available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

2011) ("A class action settlement notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up).  Thus, the proposed notice plan and the content of the notices constitute the best practicable notice to Settlement Class Members and comply with the requirements of Due Process.

## IV.    THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FINAL APPROVAL HEARING

In connection with preliminary approval, the Court must set a Final Approval Hearing date, dates for Notice, and deadlines for objecting to the Settlement and filing papers in support of the Settlement.  Plaintiffs propose the following schedule:

| Event | Proposed Deadline |
|---|---|
| CAFA Notice Pursuant to 28 U.S.C. § 1715(b) | October 24, 2025 |
| Establishment of Settlement Website | December 23, 2025 |
| Notice Date | January 16, 2026 |
| Motion for Attorneys' Fees, Costs, Expenses, and Service Award | March 2, 2026 |
| Objection and Opt-Out Deadline | March 17, 2026 |
| Claims Deadline | April 16, 2026 |
| Final Approval Motion and Response to Any Objections | May 7, 2026 |
| Deadline to Submit Notices of Appearance at the Final Approval Hearing | May 7, 2026 |
| Supplement declaration (1) stating the number of claims, requests for exclusion, and objections to date and (2) attesting that Notice was disseminated consistent with the Settlement | May 12, 2026 |
| Final Approval Hearing | May 19, 2026 at 10:00 a.m. |
| Award Issuance Date | Begins 14 days after Effective Date |

## CONCLUSION

For the foregoing reasons, Plaintiffs and Proposed Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Settlement Class for settlement purposes only, appoint Plaintiffs as the Class Representatives and Bursor & Fisher as Class Counsel, approve the proposed Notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated: October 16, 2025                    Respectfully submitted,

By: /s/ Max S. Roberts
Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
    klynn@bursor.com
    jwilner@bursor.com

*Attorneys for Plaintiff*