**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISHAL SHAH, and JAYDEN KIM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FANDOM, INC.,<br><br>Defendant. | Case No. 3:24-cv-01062-RFL<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF**<br><br>Date: December 16, 2025<br>Time: 10:00 a.m.<br>Ctrm: 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

Pursuant to the Court's December 4, 2025 Order (ECF No. 75), Plaintiffs Vishal Shah and Jayden Kim respectfully submit the following supplemental brief regarding the issues identified by the Court. Defendant Fandom, Inc. joins in the statements set forth below.

**1. Epiq notes that 45% of the likely target audience for the class notice speaks primarily Spanish. Will the settlement website include Spanish versions of claim form and long form notice, and will the toll-free number have Spanish assistance available?**

The notice program currently includes publication on at least some websites "in English and Spanish." ECF No. 71-7 ¶¶ 29, 35, 38. As set forth in the Supplemental Azari Declaration, the toll-free number will have Spanish assistance, there will be Spanish versions of the claim form and long form notice on the Settlement Website, and the Settlement Website "will include a prominent call out alerting Settlement Class Members of the availability of information in Spanish." *See* Supp. Azari Decl. ¶ 7.

**2. What was Epiq's rationale for calculating the claims rate? In *Mirmalek v. Los Angeles Times Commc'ns, LLC*, No. 3:24-cv-1797 (N.D. Cal.), which Plaintiffs identify as a comparable case involving similar claims, the total claims rate was estimated by Kroll at 1% to 6%, which is significantly higher than Epiq's estimate.**

As an initial matter, there is an important difference between the notice plan in *Mirmalek* versus this case. In *Mirmalek*, the defendant had the "billing address" for "approximately 335,000" members of that settlement class (*i.e.*, the California-based subscribers of *The Los Angeles Times*). *Mirmalek v. Los Angeles Times Commc'ns, LLC*, No. 3:24-cv-1797, ECF No. 45-1 ¶ 7 (N.D. Cal. Oct. 15, 2025). Thus, the notice plan in *Mirmalek* was able to include direct notice via mail and e-mail (in addition to publication notice for non-subscribers). *Id.* ¶ 47. Here, however, the notice plan includes *only* publication notice "because Defendant does not have contact information for the Settlement Class." *Shah*, ECF No. 71-1 ¶ 51.

For the reasons set forth in Plaintiffs' motion (ECF No. 71 at 14:8-20), Epiq's notice program here represents the best notice practicable given the available data. And, as noted in the Roberts Declaration, Plaintiffs "solicited notice bids" from Epiq and Kroll here—and both proposals involved

only publication notice—but believed Epiq's notice plan was more effective. ECF No. 71-1 ¶ 51. However, direct notice will, by nature of *directly* informing class members, likely always result in a higher claims rate than publication notice. *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (noting direct notice "is typically the preferred form of notification because of its efficacy"). Thus, because the *Mirmalek* notice plan involves direct notice, the claims rate there is expected to be higher.

As to the estimated claims rate here, Epiq estimated the claims rate "[b]ased on [its] experience handling similar consumer class action settlements" "that had an unknown class size," and the possibility for "a high volume of fraudulent claims." ECF No. 71-7 ¶ 44. However, Epiq clarified that this estimate was intentionally "conservative[]." *Id.* The Supplemental Azari Declaration, submitted herewith, elaborates on the basis for calculating the estimated claims rate. *See* Supp. Azari Decl. ¶ 8.

**3. As in *Mirmalek*, should the settlement website be configured to only allow online claim forms from those who are visiting from an IP address that is among the 4.3 million identified, in order to reduce fraudulent claims?**

In any class settlement, it is always important to strike a balance between deterring fraudulent claims while also not preventing legitimate claims. To be sure, striking that balance is not an exact science. But here, the Parties respectfully submit that implementing the above requirement would run the risk of preventing too many legitimate claims. For instance, a Settlement Class Member may have moved since the time Defendant supplied the list of IP addresses in early 2025 (Roberts Decl. ¶ 11), or may just be using a different internet service provider. That person is a legitimate Settlement Class Member, but would not be able to access the website because his or her IP address may be different. Even if their IP address is different, that Settlement Class Member may also have browser history showing they visited gamespot.com or its subdomains during the Class Period (and thus, were subject to the alleged tracking practices). Or, they may have cleared their browsing history in the last year, as many people do. Given these considerations, the Parties believe implementing this authentication requirement here would run the risk of repudiating too many legitimate claims. Epiq's

internal fraud validation procedures will reduce (and hopefully eliminate) any fraudulent claims. *See*, *e.g.*, Azari Decl. 36 n.15. Indeed, Mr. Azari has spoken often about how to detect and deter fraudulent claims. *Id.* Attachment 1 at 8 (listing speaking engagements by Mr. Azari discussing fraudulent claims in class actions).[1]

The balance was different in *Mirmalek* because of the direct notice component. Not only is the claims rate expected to be higher in *Mirmalek* for the reasons discussed above, claims by those receiving direct notice are easily verifiable (*i.e.*, it is easy to determine whether someone subscribed to *The Los Angeles Times*). Because it will be easy to validate the claims by a significant number of settlement class members in *Mirmalek*—and the claims rate is expected to be higher based on direct notice—it was necessary to implement more restrictive fraud-prevention measures.

**4. Please modify the proposed preliminary approval order and long form notice as follows or explain any objection to the modifications.**

The Parties have modified the [Proposed] Preliminary Approval Order to include or remove each of the items requested by the Court, and this revised order is submitted herewith. The Parties have also added the Zoom information to the long form notice, and the revised long form notice is submitted with the Supplemental Azari Declaration. Supp. Azari Decl. Attachment 1.

Dated: December 11, 2025

Respectfully submitted,

By: */s/ Max S. Roberts*
Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor

[1] Epiq does not publicly list the criteria it uses to evaluate fraudulent claims because, if it were to, then fraudsters would know what not to do and thus, avoid the safeguards put in place. Azari Decl. ¶ 8.

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiffs*