**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISHAL SHAH and JAYDEN KIM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FANDOM, INC.,<br><br>Defendant. | Case No. 3:24-cv-01062-RFL<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 19, 2026<br>Time: 1:30 p.m.<br>Ctrm: 15, 18th Floor (And Zoom)<br>Judge: Hon. Rita F. Lin |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 19, 2026 at 1:30 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 15, 18th Floor, San Francisco, California 94102 (and via Zoom) in the courtroom of Hon. Rita F. Lin, Plaintiffs Vishal Shah and Jayden Kim ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for an order: (i) granting final approval of the proposed Class Action Settlement Agreement and Release (the "Settlement") submitted herewith; (ii) certifying the Settlement Class for the purposes of settlement; and (iii) ordering distribution of the Settlement Fund.

This Motion is made on the grounds that the proposed Settlement Agreement is fair, reasonable, and adequate, and that final approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Final Approval Order and Judgment.

The Motion is based on the Memorandum of Law filed herewith; the Settlement Agreement (ECF No. 73-1); the May 6, 2026 Declaration of Cameron R. Azari of Epiq Systems, Inc.; the [Proposed] Final Approval Order and [Proposed] Judgment submitted herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated: May 7, 2026

Respectfully submitted,

By: /s/ *Max S. Roberts*
Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL OVERVIEW ..... 2

I. ADMINISTRATION OF THE NOTICE PLAN AND THE SETTLEMENT CLASS'S STRONG REACTION TO THE SETTLEMENT ..... 2

II. MONETARY RELIEF TO SETTLEMENT CLASS MEMBERS ..... 3

ARGUMENT ..... 4

I. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ..... 4

II. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ..... 5

A. Fed. R. Civ. P. 23(e)(2)(A) – Plaintiffs And Their Counsel Have Adequately Represented The Class ..... 5

B. Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated At Arm's Length ..... 7

C. Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate ..... 7

1. The Costs, Risks, And Delay Of Trial And Appeal ..... 7

2. The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class ..... 8

3. The Terms Of Any Proposed Award Of Attorneys' Fees ..... 8

4. Any Agreement Required To Be Identified ..... 9

D. Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally ..... 9

E. The Reaction Of Settlement Class Members Supports Final Approval ..... 9

III. THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23 ..... 9

IV. THE COURT SHOULD SET DEADLINES FOR ADMINISTRATION OF THE SETTLEMENT FUND ..... 11

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.B. ex rel. Turner v. Google LLC*,
2026 WL 1195029 (N.D. Cal. May 1, 2026) ... 9

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ... 6

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ... 6

*Ching v. Siemens Indus., Inc.*,
2014 WL 2926210 (N.D. Cal. June 27, 2014) ... 10

*Cobbs v. VNGR Beverage LLC*,
2026 WL 1002051 (N.D. Cal. Apr. 14, 2026) ... 1, 5, 11

*Cohen v. Brown Univ.*,
16 F.4th 935 (1st Cir. 2021) ... 8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ... 12

*G. F. v. Contra Costa County*,
2015 WL 4606078 (N.D. Cal. July 30, 2015) ... 9

*Greer v. Dick's Sporting Goods, Inc.*,
2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ... 7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ... 7

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ... 8, 9, 10

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ... 8

*In re Google Referrer Header Privacy Litig.*,
2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ... 12

*In re Packaged Seafood Prods. Antitrust Litig.*,
2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ... 3, 11, 12, 13

*In re Vizio, Inc. Consumer Privacy Litig.*,
2019 WL 12966638 (C.D. Cal. July 31, 2019) ... 10

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ........ 10

*Kramer v. XPO Logistics, Inc.*,
2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ........ 9

*Montera v. Premier Nutrition Corp.*,
2025 WL 751542 (N.D. Cal. Mar. 10, 2025) ........ 2, 5

*Norton v. LVNV Funding, LLC*,
2021 WL 3129568 (N.D. Cal. July 23, 2021) ........ 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ........ 12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........ 8

**STATUTES**

Cal. Pen. Code § 637.2(a)(1) ........ 4

Cal. Pen. Code § 638.50 ........ 1

Cal. Pen. Code § 638.51 ........ 1

**RULES**

Fed. R. Civ. P. 23 ........ 11, 12

Fed. R. Civ. P. 23(a) ........ 6, 8

Fed. R. Civ. P. 23(c)(2)(B) ........ 11, 12

Fed. R. Civ. P. 23(e) ........ passim

**MEMORANDUM OF LAW**

**INTRODUCTION**

Over two years ago, Plaintiffs and their counsel brought a relatively novel theory of liability: that Defendant's installation and use of third-party Trackers[1] that collected IP addresses and other identifiers from users to Defendant's Website constituted a "pen register" under Cal. Pen. Code § 638.50(b). Against substantial risks both in adjudicating the merits and securing class status in this litigation, appellate petitions that threaten to eviscerate Plaintiffs' claims, and legislative efforts that threaten to do the same, Plaintiffs achieved a $1.2 million settlement that is the second-ever involving claims brought under Cal. Pen. Code §§ 638.50-638.51.

Since the Court preliminarily approved the Settlement in December and notice was disseminated, the reaction to the Settlement has been overwhelmingly positive. Epiq, the Settlement Administrator, has received nearly 402,000 claims, compared to *one* exclusion request and *zero* objections. May 6, 2026 Declaration of Cameron R. Azari (the "May Azari Decl.") ¶¶ 27, 29. Epiq is continuing to audit the claims for validity and fraud. *Id.* ¶¶ 29-30. Regardless, the high number of claims compared to the nearly non-existent number of objections and exclusions strongly supports final approval of the settlement. *Cobbs v. VNGR Beverage LLC*, 2026 WL 1002051, at *7 (N.D. Cal. Apr. 14, 2026) ("The absence of … objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (cleaned up).

So too does the amount Settlement Class Members will recover. Assuming each of the received claims are valid, Settlement Class Members will receive at least $1.64 a piece. Factual and Procedural Overview § II, *infra*. This amount *exceeds* Settlement Class Members' estimated actual damages, which are the proper measure of comparison given an award of statutory damages may have been found to be excessive under Ninth Circuit precedent. *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding reduced statutory damages after finding

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement (ECF No. 73-1).

full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals"). In a case where *any* recovery was far from certain in light of the aforementioned risks, the Settlement thus represents a significant recovery.

In sum, the Settlement was reached by counsel who were sufficiently well-versed in the underlying theory of liability. It placates the significant risks of non-recovery, the delays in litigation, and provides a recovery for Settlement Class Members above their likely actual damages. And, importantly, it was responded to with hundreds of thousands of claims, a single opt-out, and no objections. There is no reason for the Court to not declare the Settlement fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

For the following reasons, the Court should grant final approval to the Settlement.

## FACTUAL AND PROCEDURAL OVERVIEW

The factual and procedural background of this matter are discussed in detail in the October 16, 2025 (ECF No. 71-1) and February 27, 2026 (ECF No. 83-1) Declarations of Max S. Roberts (the "Oct. Roberts Decl." and "Feb. Roberts Decl.," respectively). *See* Oct. Roberts Decl. ¶¶ 4-17; Feb. Robetrts Decl. ¶¶ 9-11. On December 16, 2025, this Court granted preliminary approval of the Settlement. ECF No. 79. The material terms of the Settlement are described in Plaintiffs' Motion for Preliminary Approval (ECF No. 71) at 2-7.

### I. ADMINISTRATION OF THE NOTICE PLAN AND THE SETTLEMENT CLASS'S STRONG REACTION TO THE SETTLEMENT

On October 24, 2025, Epiq provided CAFA notice to "to 53 officials (the Attorneys General of 47 states, the District of Columbia, and the United States Territories)." May Azari Decl. ¶ 6. Further, Epiq implemented the Notice Plan following the Court's Preliminary Approval Order, including establishing the settlement website on January 15, 2026. *Id.* ¶¶ 10, 25. Consistent with the Court's instructions in advance of the Preliminary Approval Hearing (ECF No. 75), Epiq provided Notice via advertisements in both English and Spanish, and both the Claim Form and Long Form Notice were provided on the Settlement Website in both English and Spanish. *Id.* ¶¶ 12, 24. The Settlement help line also had both English and Spanish options. *Id.* ¶ 25. By Epiq's estimation, "[t]he Notice Plan reached approximately 70% of the Settlement Class." *Id.* ¶ 34. This is consistent

with judicial guidelines. *In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable.") (cleaned up).

Pursuant to District Guideline 1, no "class notices and claim packets" were undeliverable because notice here was provided solely through publication (*e.g.*, digital advertising, sponsored search listings, and a news release). May Azari Decl. ¶¶ 11-23. Also pursuant to this Guideline, "Epiq [] received 401,929 Claim Forms," one request for exclusion, and *zero* objections. *Id.* ¶¶ 27, 29. "Epiq is in the process of conducting a complete quality control review of Claim Forms received" and "[t]here is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms." *Id.* ¶ 29.

"Through March 2026, administration fees and expenses total $80,111.99, which is inclusive of the costs to implement the Notice Plan and administer the notice-related components of the settlement to date." *Id.* ¶ 31. "Epiq anticipates additional fees and expenses will be incurred to complete the settlement administration." *Id*. Even so, Notice is expected to be within the $130,000-$150,000 estimate that Plaintiffs provided the Court in their Motion for Preliminary Approval, if not less. ECF No. 71 at 6:23-24.

## II. MONETARY RELIEF TO SETTLEMENT CLASS MEMBERS

As noted above, Epiq is still reviewing the submitted claims for validity (May Azari Decl. ¶¶ 29-30), and Plaintiffs will not know the final payment to Settlement Class Members until the post-distribution accounting. For the purposes of this Motion, however, Plaintiffs provide a preliminary estimate of the recovery per Settlement Class Member. This estimate will assume: (i) all 401,929 claims are valid; (ii) Plaintiffs' request for attorneys' fees, costs, and expenses ($399,962.96) and service awards ($10,000) is granted in full; and (iii) Epiq incurs $130,000 in notice administration costs. With those estimates in mind, each Settlement Class Member will receive at least $1.64.[2]

This recovery is more than reasonable. As Plaintiffs previously noted, and as this Court recognized, actual damages are the better comparison for this case over statutory damages. While

[2] ($1.2 million Settlement Fund – $399,962.96 – $10,000 – $130,000) ÷ 401,929 claims = $1.64.

Cal. Pen. Code § 637.2(a)(1) provides for statutory damages of $5,000 for each violation, an award of statutory damages may have been found to be excessive under Ninth Circuit precedent. Feb. Roberts Decl. Ex. 1 at 4:10-14 ("I do think that plaintiffs are right that the best measure is actual damages, not statutory damages in terms of determining reasonableness. There's a real likelihood that statutory damages would be excessive in a case like this."); *Montera*, 2025 WL 751542, at *7 (awarding reduced statutory damages after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals"). And even $1.64 is in excess of Plaintiffs' actual damages here, which would likely be a few cents on the dollar. Oct. Roberts Decl. ¶¶ 21-28 (detailing analysis of how much Plaintiff Kim's information was sold for—$0.79 cost per mille—and thus, Plaintiffs' estimated measure of actual damages).

Again, Settlement Class Members may ultimately recover more following a final audit of the claims by Epiq. Regardless, the estimated recovery of Settlement Class Members—a recovery in excess of their actual damages, and in a case where *any* recovery was far from certain—is more than reasonable. *Cobbs*, 2026 WL 1002051, at *7 ("Under the settlement, each Class Member with an approved claim is entitled to a payment of up to $0.75 per can purchased, $3.00 per 4-pack purchased, $6.00 per 8-pack purchased, and $9.00 per 12-pack or 15-pack purchased. These amounts constitute a significant percentage of the retail cost of these cans and the anticipated maximum recovery at trial.").

## ARGUMENT

### I. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's Preliminary Approval Order provisionally certified the Settlement Class of "all persons who accessed www.gamespot.com, or any of its subdomains, in California and had their information collected by the Trackers between January 5, 2023 to the present, meaning the Effective Date of the Settlement." ECF No. 79 ¶ 5. Nothing has changed between Preliminary Approval and Final Approval that would warrant a different result. In addition, no objections have challenged that conclusion. May Azari Decl. ¶ 27.

Accordingly, for the reasons set forth in the Court's Preliminary Approval Order, the Court

should finally certify the Settlement Class. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) (certifying class at final approval where "the Court found that the putative class satisfied the … requirements of Rule 23(a)" for preliminary approval and "[t]he Court is unaware of any changes that would alter its analysis") (cleaned up); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) ("Because circumstances have not changed, and for the reasons set forth in its Order of November 12, 2015, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).") (cleaned up).

## II. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Fed. R. Civ. P. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." To make this determination, the Court evaluates whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Courts in this Circuit also evaluate the reasonableness of settlements under the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). These factors "substantively track those provided in [current version of] Rule 23(e)(2)." *Greer v. Dick's Sporting Goods, Inc.,* 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020). Thus, satisfaction of Fed. R. Civ. P. 23(e)(2) is commensurate with satisfaction of the *Hanlon* factors. *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) ("The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis.").

### Fed. R. Civ. P. 23(e)(2)(A) – Plaintiffs And Their Counsel Have Adequately Represented The Class

This factor overlaps with the adequacy requirement of Fed. R. Civ. P. 23(a), and so courts "look to case law glossing the stipulation that the representative parties will fairly and adequately

protect the interests of the class." *Cohen v. Brown Univ.*, 16 F.4th 935, 945 (1st Cir. 2021); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met."). "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).

For the reasons set forth in prior motions—including Plaintiffs' Motion for Preliminary Approval and Motion for Attorneys' Fees, Costs, Expenses, and Service Awards—both Plaintiffs and Class Counsel have more than met this standard. To summarize, as to Plaintiffs, they kept in constant communication with counsel, reviewed important documents—including the Complaint, First Amended Complaint, and Settlement—and assisted with Class Counsel's investigation of this matter, and provided their browser traffic from the GameSpot website that supported their allegations. Feb. Roberts Decl. ¶ 36; Declaration of Vishal Shah (ECF No. 83-2) Shah Decl. ¶¶ 4-6, 8; Declaration of Jayden Kim (ECF No. 83-3) ¶¶ 4-6, 8. Moreover, Plaintiffs had their devices imaged in preparation for the mediation, which prevented Plaintiffs from using their laptops for several hours or more. Feb. Roberts Decl. ¶ 36; Shah Decl. ¶ 6; Kim Decl. ¶ 6. Plaintiffs were also prepared to sit for a deposition and testify at trial were this matter to go forward. Feb. Roberts Decl. ¶ 36; Shah Decl. ¶ 6; Kim Decl. ¶ 6.

As to Class Counsel—who is highly experienced in data privacy class actions—they litigated a relatively novel theory through a motion to dismiss and motion for reconsideration or interlocutory appeal, conducted substantial factual and technical research regarding Plaintiffs' allegations, negotiated the Settlement at arm's length with Defendant, including attending a mediation with Hon. Robert B. Freedman (Ret.), and subpoenaed third parties to ascertain the contact information for Settlement Class Members, including working with a non-testifying expert on the same. Feb. Roberts Decl. ¶¶ 16-22; *see also id.* Ex. 2. Adequacy is therefore satisfied.

**Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated At Arm's Length**

Both Proposed Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at *5; *see also* Oct. Roberts Decl. ¶¶ 33, 35, 44-45. "The settlement agreement here was reached after [one] and a half years of litigation, including plaintiffs' success in opposing defendants' motion to dismiss" and motion for reconsideration or interlocutory appeal. *A.B. ex rel. Turner v. Google LLC*, 2026 WL 1195029, at *5 (N.D. Cal. May 1, 2026). Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations facilitated by a neutral mediator," Hon. Robert B. Freedman (Ret.). *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (cleaned up); *see also* Oct. Roberts Decl. ¶¶ 3, 10, 13.

**Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate**

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6.

*1. The Costs, Risks, And Delay Of Trial And Appeal*

Plaintiffs have outlined the risks this relatively novel case faced at class certification and on the merits, notwithstanding Plaintiffs' and Class Counsel's confidence in their theory of liability. *See* Oct. Roberts Decl. ¶¶ 29-34; Feb. Roberts Decl. ¶¶ 12-14; *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024) ("The novelty and scope of Plaintiffs' privacy allegations made this a particularly risky case to litigate."). In addition to disputes on the merits and at class certification, the risks to Plaintiffs' theory of liability were compounded by developments in

the California Court of Appeal and the California Legislature, both of which could have eviscerated Plaintiffs' claims. *In re Vizio, Inc. Consumer Privacy Litig.*, 2019 WL 12966638, at *7 (C.D. Cal. July 31, 2019) (finding fee award reasonable where recent Ninth Circuit decision "threatens to undermine Plaintiffs' theory of VPPA liability, and Plaintiffs' Wiretap Act claim raises an issue of first impression in the Ninth Circuit"). All these roadblocks—in addition to the general pace of complex litigation—stood in the way of recovery on a case that is already two years old. *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as the Court.").

By contrast, the Settlement provides Settlement Class Members with more than their potential actual damages, does so immediately, and avoids the substantial risk of no recovery. This factor is clearly satisfied.

*2. The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class*

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." 2018 Advisory Note to Fed. R. Civ. P. 23(e)(2)(C)-(D). Here "Class Members must submit a Claim Form in order to receive any cash award. However, the Claim Form is a simple one-page form that asks each potential Class Member to answer a single question—namely," to attest that they accessed gamespot.com or its subdomains in California during the Class Period. *See Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *11 (N.D. Cal. July 23, 2021). Given over 400,000 claims were submitted, this proposed method of distribution was clearly not unduly burdensome. May Azari Decl. ¶ 29.

*3. The Terms Of Any Proposed Award Of Attorneys' Fees*

Class Counsel applied to the Court for an award of $348,090.00, or approximately 29% of the $1.2 million Settlement Fund, as well as $51,872.96 in litigation costs and expenses. That request is reasonable for reasons set forth in the Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (ECF No. 83).

#### 4. *Any Agreement Required To Be Identified*

"There are no agreements required to be identified under Rule 23(e)(3) here, so the Court" need not evaluate this factor. *Cobbs*, 2026 WL 1002051, at *6 n.9.

### Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally

"All Class Members are entitled to the same relief, and the payments are calculated on a *pro rata* basis … This pro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages." *Cobbs*, 2026 WL 1002051, at *7.

### E. The Reaction Of Settlement Class Members Supports Final Approval

"While not one of the explicit Rule 23(e) factors, the reaction of the Class Members also supports final approval." *Id*. "The Notice Plan reached approximately 70% of the Settlement Class" (May Azari Decl. ¶ 34), which is consistent with judicial guidelines. *In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *2 ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable.") (cleaned up). Against this extensive reach, nearly 402,000 Settlement Class Members submitted claims while only one excluded themselves and zero objected. May Azari Decl. ¶¶ 27, 29. "The absence of … objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Cobbs*, 2026 WL 1002051, at *7 (cleaned up).

## III. THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23

Before final approval can be granted, Due Process and Fed. R. Civ. P. 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Such notice to class members must be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e)(1) ("The court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) ("The class must be notified of a proposed settlement in a manner that does not systematically leave

any group without notice.") (cleaned up). The notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).

At Preliminary Approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Fed. R. Civ. P. 23 and Due Process. *See* ECF No. 79 ¶ 11. Epiq has now fully carried out the Notice Plan, and it easily meets these standards. The Notice Plan involved informing Settlement Class Members of their rights via publication notice, including through digital advertising (in English and Spanish), sponsored search listings, and a news release (in English and Spanish). May Azari Decl. ¶¶ 12, 20, 23. Publication notice was the best practicable notice because "direct notice to class members by mail, e-mail or other electronic individualized means [wa]s impractical." *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *7 (N.D. Cal. Mar. 26, 2014).

The Notice directed Settlement Class Members to the settlement website, which "includes relevant dates, answers to frequently asked questions ('FAQs'), instructions for how Settlement Class Members could opt-out (request exclusion) from or object to the Settlement prior to the deadlines, contact information for the Settlement Administrator, and how to obtain other case-related information." May Azari Decl. ¶ 24; *see also In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *3 ("The notices contain clear and understandable summaries of the litigation and the options that are available to Class Members. The notice documents provide instructions on how to obtain more information about the litigation."). A toll-free number was also established (May Azari Decl. ¶ 25), and the notice documents, claim form, and toll-free number had English and Spanish options. *Id.* ¶¶ 24-25; *see also In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *3 n.4 ("To the extent that some Class Members may speak Spanish as their primary language, the printed notice documents include a subheading in Spanish directing Spanish-speaking Class Members to visit the case website or call the toll-free number for a Spanish language notice.").

"The Notice Plan reached approximately 70% of the Settlement Class" (May Azari Decl. ¶ 34), which is consistent with judicial guidelines. *In re Packaged Seafood Prods. Antitrust Litig.*,

2023 WL 2483474, at *2 ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable.") (cleaned up). This included "746,401 unique visitor sessions to the settlement website and approximately 81.5 million impressions. May Azari Decl. ¶¶ 19, 24. There were also "45 calls to the toll-free telephone number representing 87 minutes of use." *Id.* ¶ 25. Finally, as noted above, nearly 402,000 claims were submitted compared to one request for exclusion and zero objections. *Id.* ¶¶ 27, 29.

## IV. THE COURT SHOULD SET DEADLINES FOR ADMINISTRATION OF THE SETTLEMENT FUND

Pursuant to the Court's Individual Rules, Plaintiffs provide the following proposed schedule for administration of the Settlement Fund:

| Event | Proposed Deadline |
|---|---|
| Final Approval Hearing | May 19, 2026 at 1:30 p.m. The Final Approval Hearing shall be held both in person and via Zoom at the "Join Zoom Hearing" link available here: https://cand.uscourts.gov/judges/rfl/lin-rita-f. |
| Effective Date | May 29, 2026[3] |
| Payment of Class Counsel's Attorneys' Fees (90%), Costs, and Expenses | June 8, 2026 |
| Payment of Service Awards | June 29, 2026 |
| Defendant to Pay the Settlement Fund Into the Escrow Account | July 3, 2026 |
| Payments to Settlement Class Members with Approved Claims | August 27, 2026 |
| Post-Distribution Interim Accounting | September 17, 2026 |
| Distribution of Remaining Attorneys' Fees (10%) | September 27, 2026 |
| Distribution of Uncashed Settlement Checks to Settlement Class Members With Approved Claims, Or To *Cy Pres* | February 23, 2027 |
| Final Distribution Accounting | March 16, 2027 |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion, grant final approval to the Settlement, and enter the [Proposed] Final Approval Order and [Proposed] Final Judgment in the form submitted herewith.

Dated: May 7, 2026

Respectfully submitted,

By: */s/ Max S. Roberts*
Max S. Roberts

[3] This assumes the Court enters the [Proposed] Final Approval Order and [Proposed] Final Judgment on the same day as the Final Approval Approving, which, of course, it may not.

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

*Class Counsel*