**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISHAL SHAH and JAYDEN KIM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FANDOM, INC.,<br><br>Defendant. | Case No.: 3:24-cv-01062-RFL |

**SUPPLEMENTAL DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President of Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Managing Director of Epiq Legal Noticing (aka Hilsoft Notifications), a business unit of Epiq that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

4. The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of business at Epiq and Epiq Legal Noticing (hereinafter "Epiq").

**OVERVIEW**

5. This declaration provides updated settlement administration statistics following the successful implementation of the Settlement notice plan ("Notice Plan") and notice (the "Notice" or "Notices") for *Shah v. Fandom, Inc.*, Case No. 3:24-cv-01062, pending in the United States District Court for the Northern District of California. This includes the information requested by the Court in the Court's May 7, 2026 update to the *Standing Order for Civil Cases Before Judge Rita F. Lin*. I previously executed my *Declaration of Cameron R. Azari, Esq. Regarding Notice Plan* ("Notice Plan Declaration") on October 16, 2025, which described the Notice Plan, detailed Epiq's class action notice experience, and attached Epiq's *curriculum vitae.* I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs. Subsequently, I executed my *Supplemental Declaration of Cameron R. Azari, Esq. Regarding Notice Plan* ("Supplemental Notice Plan Declaration") on December 11, 2025, which provided additional information regarding the Notice Plan and planned settlement administration to address the questions posed by the Court in the Court's *Order Requesting Supplemental Briefing*, issued on December 4, 2025. Most recently, I executed my *Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan* ("Implementation Declaration") on May 6, 2026, which described the successful implementation of the Notice Plan and provided settlement administration statistics.

**CAFA NOTICE**

6. As detailed in my Implementation Declaration, on October 24, 2025, Epiq sent 57 CAFA Notice Packages ("CAFA Notice"), as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715.

**NOTICE PLANNING METHODOLOGY**

7. Federal Rules of Civil Procedure, Rule 23 directs that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1] The Notice Plan satisfied these requirements.

8. This Notice Plan as designed and implemented reached the greatest practicable number of Settlement Class Members. The Notice Plan reached approximately 70% of the Settlement Class using a Media Plan (digital and social media notice) with an average frequency of 2.4 times each. The reach was further enhanced by internet sponsored search listings, an informational release, and a settlement website, which were not included in the reach calculation. In my experience, the Notice Plan was consistent with other court-approved notice plans, was the best notice practicable under the circumstances of this case, and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2] The Notice Plan also complied with the Court's Standing Order for Civil Cases.

**NOTICE PLAN DETAIL**

9. As detailed in my Implementation Declaration, on December 16, 2025, the Court approved the Notice Plan and appointed Epiq as the Settlement Administrator in the *Order Granting Preliminary Approval of Class Action Settlement* ("Preliminary Approval Order").

10. After the Court's Preliminary Approval Order was entered, Epiq implemented the Notice Plan. This declaration details the notice activities undertaken to date and explains how and why the

[1] Fed. R. Civ. P. 23(c)(2)(B).

[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ."); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("To satisfy Rule 23(e)(1), settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably.' 'Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citations omitted); N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval (3) (articulating best practices and procedures for class notice).

Notice Plan was comprehensive and well-suited to reach the Settlement Class Members. This declaration also discusses the updated administration activity to date. Epiq is unaware of any issues with notice or confusion among Settlement Class Members.

## NOTICE PLAN

### ***Media Plan***

#### *Internet Digital Notice Campaign*

11. As detailed in my Implementation Declaration, the Notice Plan included targeted digital advertising ("Digital Notices") on the selected advertising networks *Google Display Network* and *Yahoo Audience Network* (in English and Spanish), which represent thousands of digital properties across all major content categories. Digital Notice also ran on Gamespot.com targeting adults 18+. Digital Notices were targeted to selected target audiences and were designed to encourage participation by Settlement Class Members—by linking directly to the settlement website, allowing visitors easy access to relevant information and documents.

12. Digital Notices were also placed on the leading social media platforms in the United States, including *Reddit*, *YouTube*, *Facebook*, and *Instagram*. The social media campaign used an interest-based approach which focused on the interests that users exhibited while on the social media platforms, capitalizing on the target audience's propensity to engage in social media.

13. As detailed in my Implementation Declaration, the Digital Notices were distributed to a variety of target audiences, including those relevant to individual's demonstrated interests and/or likes. All Digital Notices appeared on desktop, mobile, and tablet devices. Digital Notices on *Google Display Network*, *Yahoo Audience Network*, *Reddit*, *YouTube*, *Facebook*, and *Instagram* were displayed in the State of California, and also nationwide. Digital Notices were also targeted (remarketed) to people who click on a Digital Notice. *Google Display Network*, *Yahoo Audience Network*, *Reddit*, *YouTube*, *Facebook*, and *Instagram* targeted Digital Notices to the selected aggregated/anonymous audience segments, and the Notice Plan did not involve the installation of anything directly on Settlement Class Members' browsers.

14. More details regarding the target audiences, specific ad sizes of the Digital Notices, and the number of delivered impressions are included in the following table:

| *Network/ Property* | *Target* | *Language* | *Ad Size* | *Delivered National Impressions* | *Delivered California Impressions* |
|---|---|---|---|---|---|
| *Google Display Network* | Adults 18+ | English / Spanish | 728x90, 300x250, 300x600 & 970x250 | --- | 6,327,939 |
| *Google Display Network* | Adults 18+ and affinity targeting[3] for video game enthusiasts, console gamers and/or PC gamers | English / Spanish | 728x90, 300x250, 300x600 & 970x250 | --- | 6,550,984 |
| *Google Display Network* | Adults 18+ and intent targeting[4] for Gamespot, video game reviews and/or video game news | English / Spanish | | 15,453,232 | 6,349,090 |
| *Yahoo Audience Network* | Adults 18+ and video game content targeting | English / Spanish | | 5,261,006 | 6,448,273 |
| *Gamespot.com* | Adults 18+ | English | | 2,273,266 | 2,116,123 |
| *Reddit* | Adults 18+ and keyword targeting for Gamespot | English | Reddit Feed Ads | 2,144,499 | 1,286,575 |
| *YouTube* | Adults 18+ and intent targeting for Gamespot and/or channel targeting for http://youtube.com/ @gamespot | English | :30 Video Ads | 2,082,557 | 1,577,953 |
| *Facebook* | Adults 18+ | English | Newsfeed & Right Hand Column | --- | 3,072,205 |
| *Facebook* | Adults 18+ and interests in Gamespot, video games and/or PC games | English | | 8,148,476 | 3,881,632 |
| *Instagram* | Adults 18+ | English | Instagram Newsfeed | --- | 1,575,691 |
| *Instagram* | Adults 18+ and interests in Gamespot, video games and/or PC games | English | Instagram Newsfeed | 4,403,589 | 2,588,398 |

[3] "Affinity Targeting" allowed Epiq to target specific websites, keywords, and/or relevant content the targeted users may have been viewing.

[4] "Intent Targeting" allowed Epiq to target individuals who were searching (or have searched) for information on this specific targeted content on the internet.

| ***Network/ Property*** | ***Target*** | ***Language*** | ***Ad Size*** | ***Delivered National Impressions*** | ***Delivered California Impressions*** |
|---|---|---|---|---|---|
| **TOTAL** | | | | **39,766,625** | **41,774,863** |

15. Combined, approximately 81.5 million impressions were generated by the Digital Notices. The Digital Notices ran from January 16, 2026, through February 26, 2026.[5] Clicking on the Digital Notices linked the readers to the settlement website, where they could easily obtain detailed information about the Settlement.

***Sponsored Search Listings***

16. As detailed in my Implementation Declaration, the sponsored search listings began on January 16, 2026, and ran through March 17, 2026. The sponsored listings were displayed 47,841 times, which resulted in 3,015 clicks that displayed the settlement website.

***Informational Release***

17. As detailed in my Implementation Declaration, on January 16, 2026, a party-neutral Informational Release was issued over *PR Newswire's California and California Hispanic Newslines* (in English and Spanish) to over 600 general media (print and broadcast) outlets as well as websites, online databases, internet networks, and social networking media in English and over 400 outlets in Spanish, plus distribution to 490 contacts nationally, covering gaming software (in English).

***Settlement Website***

18. The Settlement Website (www.GamespotSettlement.com) continues to be available 24 hours per day, 7 days per week. Relevant documents are posted on the settlement website, including the Long Form Notice (in English and Spanish), Claim Form (in English and Spanish), Complaint, Settlement Agreement, Preliminary Approval Order, Settlement Class Counsel's fee and cost application, and other case-related documents. In addition, the settlement website includes relevant dates, answers to

[5] The third-party ad management platform, ClickCease was used to audit the Digital Notice ad placements. This type of platform tracks all Digital Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent, or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

frequently asked questions ("FAQs"), instructions for how Settlement Class Members could opt-out (request exclusion) from or object to the Settlement prior to the deadlines, contact information for the Settlement Administrator, and how to obtain other case-related information. Settlement Class Members were also able to file a Claim Form on the settlement website prior to the Claims Deadline. The settlement website address was prominently displayed in all notice documents. As of May 11, 2026, there have been 746,449 unique visitor sessions to the settlement website, and 2,503,014 web pages have been presented.

***Toll-Free Telephone Number & Contact Information***

19. The toll-free telephone number (1-877-714-5775) in English and Spanish continues to be available for the Settlement. Callers are able to hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs. This automated telephone system is available 24 hours per day, 7 days per week. The toll-free telephone number was prominently displayed in all notice documents. As of May 11, 2026, there have been 49 calls to the toll-free telephone number representing 92 minutes of use.

20. A postal mailing address was established and continues to be available, allowing Settlement Class Members the opportunity to request additional information or ask questions.

***Requests for Exclusion and Objections***

21. As detailed in my Implementation Declaration, the deadline to request exclusion from the Settlement or to object to the Settlement was March, 17, 2026. As of May 11, 2026, Epiq has received one request for exclusion. As of May 11, 2026, Epiq is aware of no objections to the Settlement.

***Claim Submission & Distribution Options***

22. As detailed in my Implementation Declaration, the Notices provided a detailed summary of relevant information about the Settlement, including the settlement website address, and how Settlement Class Members could file a Claim Form online or by mail prior to the Claims Deadline. With any method of filing a Claim Form, Settlement Class Members were given the option of receiving a digital payment or a traditional paper check. Epiq worked with counsel for the parties to select an appropriate menu of

payment options. The type of digital payment selected does not impact Epiq's compensation for its work as the Settlement Administrator, and no digital option is discouraged relative to other options.

23. The deadline for Settlement Class Members to file a Claim Form was April 16, 2026. As of May 11, 2026, Epiq has received 401,930 Claim Forms (401,559 online and 371 paper). As of May 11, 2026, 318,107 Claim Forms have been started and subsequently abandoned on the settlement website. Since the Claims Deadline has just recently passed, these numbers are preliminary. As standard practice, Epiq is in the process of conducting a complete quality control review of Claim Forms received. There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms.

***Fraud Prevention & Detection for Claim Submissions***

24. Fraudulent claim filing is an unfortunate reality in many class action settlements in recent years. Given the current trends within the Class Action Industry with fraudulent claim filing by bad actors, some level of fraudulent claim filing was anticipated in a case like this. Epiq partners with the top resources in the industry to combat fraud, following best practices to deter and detect fraud. Epiq is in the process of conducting an analysis of Claim Forms by looking at numerous known indicators of indicia of fraud. Epiq anticipates that some portion of the total number of Claim Forms submitted will be deemed fraudulent.

***Cost of Notice Implementation and Settlement Administration***

25. As detailed in my Implementation Declaration, through March 2026, administration fees and expenses total $80,111.99, which is inclusive of the costs to implement the Notice Plan and administer the notice-related components of the settlement to date. The cost encompasses digital notice and social media, internet sponsored search listings, an informational release, and settlement administration (website/toll-free telephone support and associated project management). Based on the current scope of settlement administration, Epiq anticipates additional fees and expenses will be incurred to complete the settlement administration, leading up to and following the Final Approval Hearing.

26. Additional work remains leading up to and following the Final Approval Hearing to complete all aspects of the settlement administration. The remaining work to be completed includes: (1)

comprehensive reporting and analysis of Claim Forms looking at numerous known indicators of indicia of fraud to identify and reject fraudulent Claim Forms; (2) mail defect letters (including print and postage); (3) distributing settlement funds to members of the Settlement Class with a valid Claim Form (digital payments or physical checks and postage); (4) handling undeliverable payments; (5) re-issuing payments; (6) communications with members of the Settlement Class, including maintaining the settlement website and toll-free telephone number throughout the remaining duration of the settlement administration; and (7) associated project management and related billable hours to handle the distribution and related settlement administration responsibilities. All fees and expenses are subject to the Service Contract under which Epiq is retained as the Settlement Administrator, and the terms and conditions of that agreement.

## CONCLUSION

27. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that the notice plan be designed to reach the greatest practicable number of potential class members and, that the notice or notice plan provide class members with easy access to the details of how the class action may impact their rights. All of these requirements were met in this case.

28. As detailed in my Implementation Declaration, the Notice Plan reached approximately 70% of the Settlement Class using a Media Plan (digital and social media notice) with an average frequency of 2.4 times each. The reach was further enhanced by internet sponsored search listings, an informational release, and a settlement website, which was not included in the reach calculation. The Federal Judicial Center's ("FJC") *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which is relied upon for federal cases and is illustrative for state courts, states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."[6] Here,

---

[6] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

we have developed and implemented a Notice Plan that readily achieved a reach within that standard.

29. The Notice Plan provided the best notice practicable under the circumstances, conformed to all aspects of Federal Rules of Civil Procedure Rule 23 regarding notice as well as the N.D. Cal. Procedural Guidance for Class Action Settlements, and the Court's Standing Order for Civil Cases, comported with the guidance for effective notice stated in the Manual for Complex Litigation, Fourth and applicable FJC materials, and satisfied the requirements of due process, including its "desire to actually inform" requirement.

30. The Notice Plan schedule afforded enough time to provide full and proper notice to the Settlement Class Members before the Objection/Exclusion Deadline. Settlement Class Members were provided with at least 35 days from the notice completion date until the opt-out deadline.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed May 12, 2026.

Cameron R. Azari, Esq.