**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH, and JAYDEN KIM, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FANDOM, INC.,

Defendant.

Case No. 3:24-cv-01062-RFL

**DECLARATION OF LOREE KOVACH REGARDING FRAUDULENT CLAIMS ANALYSIS**

**REDACTED**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH and JAYDEN KIM, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FANDOM, INC.,

Defendant.

Case No.: 3:24-cv-01062-RFL

**DECLARATION OF LOREE KOVACH REGARDING FRAUDULENT CLAIMS ANALYSIS**

I, Loree Kovach, hereby declare and state as follows:

1. I am a Senior Vice President with Epiq Class Action & Claims Solution, Inc. I have approximately 20 years of experience overseeing all aspects of many large, complex, and high-profile consumer matters. With my extensive background in the class action administration profession, I am routinely called upon by clients to provide strategic direction for handling large, complex data and claim sets.

2. I received my Bachelor of Business Administration degree in finance from Florida State University and Juris Doctor degree from Florida State University College of Law. The following statements are based upon my personal knowledge and experience, information provided to me by other experienced Epiq employees working under my supervision, and review of Epiq's business records, in

addition to information provided to me by Epiq's digital payment partner on this matter, Digital Disbursements ("DD").[1] If called upon, I could and would testify competently thereto.

**OVERVIEW**

3. This declaration provides an in-depth report of Epiq's fraud review analysis related to fraudulent Claim Forms following the *Notice of Questions for Hearing*, issued by the Court on May 14, 2026. Unfortunately, the convenience and cost-efficiency of electronic claim filing, among other things, have resulted in an increased occurrence of fraud. The concept of fraudulent claim filing is not new in and of itself, but the scale and scope has increased dramatically in recent years with the growing sophistication of "bot-filed" claims (computer programs written to file mass claims and evade traditional fraudulent claim detection methods). The landscape is also very dynamic, with bad actors continually changing their methods to evade steps that claims administrators take to prevent, detect, and eliminate fraudulent claims. The methods employed today by both the bad actors and administrators may not be the identical ones used a year or even six months from now.

**CLAIM SUBMISSIONS & FRAUD OVERVIEW**

4. The deadline for Settlement Class Members to file a Claim Form was April 16, 2026. The *Supplemental Declaration of Cameron R. Azari Regarding Implementation and Adequacy of Notice Plan* ("Supplement Azari Declaration") executed on May 12, 2026 (Dkt. 85) reported to the Court that as of May 11, 2026, Epiq had received 401,930 Claim Forms (371 paper Claim Forms and 401,559 online Claim Forms). Of the 401,559 online Claim Forms received:

- [redacted]

[1] Digital Disbursements ("DD"), a wholly owned subsidiary of Western Alliance Bank, has been awarded more than 700 class action and mass tort settlement distributions from more than 25 different settlement administrators over the past five years. During this time, DD has handled more than 200 million payment selections in class action and mass tort settlements.

- [redacted]
- [redacted]

**FRAUDULENT CLAIMS VALIDATION TECHNICS & ANALYSIS**

[redacted]

5. As noted in the Supplemental Azari Declaration, fraudulent claim filing is an unfortunate reality in many class action settlements in recent years. Given the current trends within the Class Action industry with fraudulent claim filing by bad actors, some level of fraudulent claim filing was anticipated in a case like this.

6. Epiq partners with the best resources in the industry to detect and combat fraud. Using EpiqShield™, a proprietary approach developed by experienced, industry experts, and working with our digital payment partner, Epiq maintains a vigorous, multi-layered fraud detection process to prevent, detect, and provide in-depth analysis regarding possible fraudulent claim submissions. EpiqShield™ uses numerous anti-fraud measures, extensive technology, and information security resources, including secure banking solutions. These tools serve to detect and prevent fraud attempts perpetuated by bots (automated software that is programmed to file large volumes of claims, which are often fraudulent claims), via click farms and other similar methods. Epiq also addresses smaller-scale fraud from individual bad actors seeking to falsify claim information thorough manual review as needed.

7. Fraud detection and prevention begin with the launch of the claim-filing website, where Epiq employs a protective layer that screens website traffic before it reaches the claim-filing features. This tool can identify and mitigate automated or suspicious activities commonly associated with fraudulent mass submissions, including bots, scripted abuse, and unusually high request volumes. It assigns bot

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

***Fraud Analysis Results***

27. Of the 401,559 online Claim Forms filed, the results of the fraud analysis are included in the following table:

| Fraud Category | Status | Claim Form Count | Claim Form % |
|---|---|---|---|
| High Indicia Fraud Score | Denied | 266,453 | |
| **Total – Denied** | | **266,453** | **66.3%** |
| Medium Indicia Fraud Score | Pending | 57,683 | |
| **Total – Pending** | | **57,683** | **14.4%** |
| Low Indicia Fraud Score | Move to Final Eligibility Review | 50,728 | |
| No Indicia Fraud Score | Move to Final Eligibility Review | 26,695 | |
| **Total – Move to Final Eligibility Review** | | **77,423** | **19.3%** |

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

**<u>POST-DISTRIBUTION ACCOUNTING & PAYMENT OF SETTLEMENT ADMINISTRATION</u>**

32. The Court's *Notice of Questions for Hearing*, issued on May 14, 2026, provided "the Court intends to withhold the settlement administration fee until after the post-distribution accounting has been filed in line with the Court's recently adopted Civil Standing Order and the post-distribution accounting should

address how Epiq handled issues concerning fraud." The Court posed the question of whether there is any objection to this approach.

33. In compliance with the Court's rules and standing order, as standard practice for administering a settlement in the Northern District of California, Epiq plans to provide a post-distribution accounting report to the Court. Epiq has no objection to providing the Court with any additional and updated information regarding how Epiq handled issues concerning fraud in the post-distribution accounting report.

34. Regarding Epiq's settlement administration fee, Epiq respectfully requests that the Court reconsider the delay of payment of the entirety of this fee until after the post-distribution accounting has been filed. Epiq began work on this administration in September 2025, assisting Class Counsel with drafting notices and planning noticing efforts. Throughout the settlement administration process, Epiq has complied with all requirements in the Settlement Agreement and Preliminary Approval Order, and effectively provided notice and handled settlement administration for Settlement Class Members. This includes: 1) sending CAFA Notice; 2) implementing the Media Plan with approximately 81.5 million digital impressions; 3) sponsored search; 4) an information release; 5) establishing and maintaining a settlement website with more than 745,000 unique visitor sessions and 2.5 million web pages presented; 6) establishing and maintaining a toll-free telephone number and handling all calls received; 7) handling Settlement Class Member correspondence; and 8) receipt and handling of more than 401,000 Claim Forms. As indicated above, Epiq has engaged in complex and ongoing efforts since the launch of the settlement website on January 15, 2026, to detect and prevent fraudulent claims. It is accordingly unduly burdensome to require Epiq to continue to carry these costs, despite its substantial efforts in furtherance of the Class's interests, until after the post-distribution accounting has been filed.

35. To date, Epiq has invoiced $86,540 for work performed to date, with additional work yet to be performed and invoiced to finalize the fraud review process as described herein, and to effectuate the distribution. Given the relatively small value of fees and expenses to date, in this instance Epiq is willing to forgo payment of its labor-related fees and expenses until after the post-distribution accounting, but respectfully requests that the Court allow reimbursement of $49,422 in out-of-pocket expenses paid by Epiq related to the publication notice. Such costs are customarily paid as incurred, and requiring Epiq to carry these costs longer than expected creates an undue burden.

36. It is unduly burdensome for Epiq to forgo payment of its fees and out-of-pocket expenses, and carry those costs without interest until months after Class Counsel and Settlement Class Members are paid.

**CONCLUSION**

37. Given the trends within the Class Action industry regarding fraudulent claim filing by bad actors, the fraudulent Claim Forms detected for this Settlement were anticipated and were comparable to what Epiq has seen in similar consumer settlements. The process described herein that has been conducted to date, as well as the anticipated Verification Process, represent best practices for addressing fraud and will lead to a successful distribution.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 18, 2026.

Loree Kovach